470 A.2d 341

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Donald Joseph SHEEHY.

Misc. (BV) No. 10, Sept. Term, 1983.

Court of Appeals of Maryland.

Feb. 1, 1984.

Monroe Jon Mizel, Kensington, for respondent.

Melvin Hirshman, Bar Counsel, Annapolis, for petitioner.

Argued before MURPHY, C.J., ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ., and ORTH, CHARLES E., Jr., Retired, Specially Assigned Judge.

PER CURIAM:

The Attorney Grievance Commission, acting through Bar Counsel, filed a petition for disciplinary action against Donald Joseph Sheehy, alleging violations of the disciplinary rules of the Code of Professional Responsibility. We referred the matter, pursuant to Maryland Rule BV9 b, to Judge Raymond G. Thieme, Jr., of the Circuit Court for Anne Arundel County to make findings of fact and conclusions of law. After conducting an evidentiary hearing, Judge Thieme filed detailed findings and conclusions as follows:

"The facts are not in dispute and have been admitted in Respondent's Answer. With minor modification, the Court

will adopt the Findings of Fact in Petitioner's Exhibit 5, which show the following:

"On March 8, 1974, Ms. [Beverly A.] Telfaire was involved in a minor auto accident in the District of Columbia. The driver of the other vehicle was one Raymond Chavis; the owner was the Darling Delaware Co., Inc. Ms. Telfaire was treated by her doctor, Dr. Thomas Dent, for back injuries, and missed at least twelve days from her part-time employment.

"Shortly afterwards, Ms. Telfaire called Mr. Sheehy to discuss the accident. Mr. Sheehy asserted that he would send her an authorization form and a retainer agreement, and did so. Ms. Telfaire sent them back, although there was some question as to whether the Respondent received them or not. Nonetheless, as far as both parties were concerned, an attorney-client relationship had been established.

"For various reasons, Respondent and Ms. Telfaire were rarely in communication. This lack of communication became sufficiently serious to cause Ms. Telfaire to complain to Bar Counsel. Contact between Mr. Sheehy and Ms. Telfaire was reestablished and Ms. Telfaire came to Mr. Sheehy's office for the first time on April 7, 1976. Ms. Telfaire executed both another retainer agreement and an authorization form, as well as provided a statement reflecting the period that she had missed work. At Respondent's urging, Ms. Telfaire asked Bar Counsel to close its investigation as she and Respondent had reached an understanding.

"The problems with communication re-commenced. In a January 26, 1977, letter, however, Respondent stated that '[a]t the present time I am trying to move Mr. Dent toward a settlement so that we can avoid filing suit.' This was, of necessity, a misrepresentation, as Mr. Dent was, in fact, Dr. Dent, the physician who treated Ms. Telfaire and not a proper party defendant.

"On March 7, 1977, Mr. Sheehy filed a personal injury and property damage action in the Superior Court of the District of Columbia, asking $50,000 in damages against a Thomas

M. Dent, who, Respondent alleged, was the driver of the vehicle that struck Ms. Telfaire. The matter was designated Civil Action 2175–77, and Respondent obtained a summons that same day to be served on Thomas M. Dent. Mr. Sheehy throughout this period was fully aware that the statute of limitations would expire on March 8, 1977. That Thomas Dent was Ms. Telfaire's doctor was readily discoverable; Mr. Sheehy had both his address and telephone number. Moreover, the police accident report, which was readily available, showed the owner of the other automobile involved to be Darling Delaware Co., Inc. and the driver to be Raymond Chavis.

"As Mr. Sheehy submitted his complaint, he hand-lettered 'and John Doe' next to the typed name of the defendant in the caption. This hand-lettering apparently was written after the complaint had been accepted for filing; in any case, it is not included on the caption of the court jacket.

"In the first week of April 1977, Mr. Sheehy was successful in amending the civil complaint. The amended complaint named neither Thomas M. Dent, nor John Doe, but it did name as defendants Raymond Chavis and Darling Delaware Co., Inc. Mr. Sheehy intended to use employees of Alarm Masters Security Systems, Inc., a company Mr. Sheehy was defending in an unrelated case, to serve process, but process had not been served by April or May, 1977. In June, 1977, a dispute between Mr. Sheehy and Alarm Masters arose which culminated in the severance of their relationship. In late 1977, or early 1978, Respondent discovered that the defendants in Ms. Telfaire's suit had never been served.

"Rather than pursue the suit any further in court, Respondent decided to reach an accommodation with Ms. Telfaire. Without consulting Ms. Telfaire, and without obtaining specific information regarding her medical expenses or lost wages, Mr. Sheehy valued her damages to be between $500 and $750, and selected a settlement figure of $1,200 which, after deduction of his one-third fee and court costs, would

net Ms. Telfaire $760. Although Mr. Sheehy spoke with Ms. Telfaire, at no time did he explain the situation to her, or tell her of his intention to pay her out of his own funds. Instead, he misrepresented the case as still being actively pursued.

"In October, 1978, Mr. Sheehy was offered a position with the District of Columbia Government as Deputy Chief of the Office of Judicial Affairs to draft legislation and legal opinions and to act as liaison to the offices of the Corporation Counsel and the U.S. Attorney. He accepted, and began to wind up his private law practice. Ms. Telfaire, having again had problems making contact with Respondent, filed a second complaint with the office of Bar Counsel.

"Deputy Bar Counsel, Edwin Yourman, obtained Mr. Sheehy's current office address and telephone number and called on February 27 and 28, as well as on March 1, 2 and 5, 1979, leaving the message that Mr. Sheehy should return his call. Mr. Sheehy did return the call March 5. He represented to Mr. Yourman that he had negotiated a $1,200 settlement on Ms. Telfaire's behalf. Mr. Yourman forwarded that information, along with Respondent's new address and telephone number, to Ms. Telfaire.

"At about the same time, Mr. Sheehy directly contacted Ms. Telfaire by mail and reported a $1,200 settlement offer. When Ms. Telfaire telephoned to discuss the offer, she expressed her dissatisfaction, but reluctantly agreed to accept the purported offer. Several weeks later, since she had not received her money, Ms. Telfaire again called Respondent. During this conversation, Mr. Sheehy said 'as soon as the people would send him the money, that he would send it to [her].'

"Communications again lapsed until May 21, 1979, when Mr. Sheehy told Ms. Telfaire that he would mail her a check for $760 that day. Meanwhile, Respondent had received a tax refund which was the actual source of funds for the check. In due course, Ms. Telfaire received and cashed a

$760 check drawn on an account labeled 'Donald J. Sheehy, Attorney-at-Law'. At no time did Respondent ever disclose to Ms. Telfaire the truth.

"In late May or early June of 1979, Ms. Telfaire brought the situation to the attention of Bar Counsel. She explained her efforts to obtain what she thought were the proceeds of the settlement from Mr. Sheehy, she described the check, and pointed out that she had never authorized the Respondent to endorse the settlement check. Bar Counsel docketed Ms. Telfaire's February 24, 1977, complaint as Sheehy/Telfaire, number 507–78. In a letter dated June 4, 1979, Bar Counsel advised Respondent of the pending investigation, and asked him to address several issues concerning the purported settlement. The letter accurately reflected the information available at that time.

"When Mr. Sheehy received Bar Counsel's letter, he drafted a deliberately ambiguous letter which deliberately failed to answer the specific questions posed. His intention was to mislead Bar Counsel into believing the settlement was legitimate.

"Mr. Yourman sent another letter dated June 28, 1979, which repeated the previous request for details regarding the alleged settlement and disbursement. Respondent realized when he received the letter that he could not respond without further misrepresentations. He then scheduled a meeting with Bar Counsel. At this meeting, Mr. Sheehy explained fully and truthfully the events heretofore described. He attributed his failings to a variety of personal problems. At the conclusion of the meeting, Bar Counsel suggested that Respondent obtain counsel, and make a written reply to Mr. Yourman's June 28, 1979, letter. Mr. Sheehy did so, and gave essentially the same information provided at the meeting.

"The Court will now consider the specific violations with which the Respondent stands charged.

*"Disciplinary Rule 7–102—Representing a Client Within the Bounds of the Law*

(A) In his representation of a client, a lawyer shall not:

3. Conceal or knowingly fail to disclose that which he is required by law to reveal.

4. Knowingly use perjured testimony or false evidence.

5. Knowingly make a false statement of law or fact.

8. Knowingly engage in other illegal conduct or conduct contrary to a Disciplinary Rule.

"Disciplinary Rule (DR) 7–102 concerns the conduct of an attorney in the representation of his client in an adversarial context. The situation in which a lawyer has made false representations to his client is not addressed by this provision. This interpretation of DR 7–102 is borne out by Ethical Considerations (EC) 7–25, 7–26, and 7–27. Ms. Telfaire's case never became adversarial in nature because the defendants were never served. No other work was done after the complaint was filed. Thus, the Court concludes that Donald Sheehy did not violate DR 7–102.

*"Disciplinary Rule 6–102—Limiting Liability to Client*

(A) A lawyer shall not attempt to exonerate himself from or limit his liability to his client for his personal malpractice.

"There is no clear and convincing evidence as required by Rule BV10d that Donald Sheehy's misrepresentations to Ms. Telfaire were made with the motive to limit his personal liability for malpractice. Respondent's testimony indicated that he settled with Ms. Telfaire with his own funds in an effort to correct his procedural mistakes by adequately compensating her as if she had gone to trial. *Attorney Grievance Commission v. Donald Sheehy,* No. 3600008, p. 41. Since Mr. Sheehy's motive is ambiguous, the Court concludes that the evidence is inconclusive as to whether or not the Respondent violated Disciplinary Rule 6–102(A).

"The Court now considers those Disciplinary Rules where there is no real issue as to whether Donald Sheehy committed the acts charged.

*"Disciplinary Rule 6–101—Failing to Act Competently*

(A) A lawyer shall not:

2. Handle a legal matter without preparation adequate in the circumstances.

3. Neglect a legal matter entrusted to him.

"Donald Sheehy's inadequate preparation of Ms. Telfaire's case is evidenced by the complaint he filed. The suit originally named an obviously improper party (Ms. Telfaire's doctor, Dr. Dent) as the defendant; while the names of the proper defendants were readily discoverable. Moreover, the complaint was filed on the day before the statute of limitations was to run in the case. Although Mr. Sheehy later amended the pleadings to reflect the appropriate defendants, Respondent neglected to see that they were served. Donald Sheehy's conduct, as set forth on pages 2–3, clearly shows neglect from the inception of the attorney-client relationship. Thus, this Court finds Donald Sheehy violated Disciplinary Rule 6–101(A)(2), (3).

*"Disciplinary Rule 1–102—Misconduct*

(A) A lawyer shall not:

4. Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

5. Engage in conduct that is prejudicial to the administration of justice.

*"Disciplinary Rule 7–101—Represent a Client Zealously*

(A) A lawyer shall not intentionally:

1. Fail to seek the lawful objectives of his client through reasonably available means permitted by law and the Disciplinary Rules, except as provided by DR 7–101(B). A lawyer does not violate this Disciplinary Rule, however, by acceding to reasonable requests of opposing counsel which do not prejudice the rights of his client, by being punctual in fulfilling all professional commitments, by avoiding offensive tactics, or by treating with courtesy and consideration all persons involved in the legal process.

2. Fail to carry out a contract of employment entered into with a client for professional services, but he may

withdraw as permitted under DR 2–110, DR 5–102, and DR 5–105.

3. Prejudice or damage his client during the course of the professional relationship, except as required under DR 7–102.

"Donald Sheehy misrepresented to Ms. Telfaire that he was actively pursuing her law suit. Further, he falsely stated to the Deputy Bar Counsel and Ms. Telfaire that he negotiated a settlement offer with the defendants when Respondent in fact paid Ms. Telfaire out of his own funds.

"The Court finds that Mr. Sheehy intentionally failed to pursue Ms. Telfaire's case through the court system. Further, Respondent's misrepresentations to Ms. Telfaire displayed his indifferent behavior to his client in the legal process.

"It is not disputed that Mr. Sheehy was employed by Ms. Telfaire as her attorney under an employment contract. Respondent failed to carry out this contract by encouraging his client to accept a fictitious settlement offer without explaining to her the truth of the matter. As a result, Ms. Telfaire's case was compromised, and the administration of justice was inhibited. This Court is convinced that Disciplinary Rules 1–102(A)(4), (5) and 7–101(A)(1), (2), (3) were violated.

"Having found the above violations, it follows that Donald Sheehy violated the blanket provision of:

"*Disciplinary Rule 1–102—Misconduct*

(A) A lawyer shall not:

1. Violate a Disciplinary Rule.

6. Engage in any other conduct that adversely reflects on his fitness to practice law.

"In conclusion, the conduct engaged in by Donald Sheehy cannot be condoned."

Bar Counsel did not except to any of Judge Thieme's findings. As to the sanction to be imposed, he recommended that we "consider the possible termination of the Respon-

dent's license to practice law in the State of Maryland or, in lieu thereof, a lengthy suspension." Bar Counsel pointed out that the incident which gave rise to the disciplinary proceedings in this case occurred in the District of Columbia and that the court there, a majority concurring, suspended Sheehy from practicing in that jurisdiction for two years.

Sheehy took no exceptions to Judge Thieme's findings but argues that the proper sanction is "public censure or in the alternative a period of suspension coterminous with that imposed by the District of Columbia." In this latter regard, under Rule XI, § 21 of the Rules Governing the Bar of the District of Columbia, an attorney suspended from practice for more than one year may be reinstated only on petition. Readmission, therefore, is not automatic.

Considering all the circumstances, we think that Sheehy's misconduct, while extremely serious, does not warrant disbarment. Instead, we shall suspend Sheehy from the practice of law in this State for two years, and he shall remain suspended beyond that time unless he has applied for readmission, and been readmitted, to the Bar of the District of Columbia following expiration of his suspension in that jurisdiction.

Sheehy's suspension shall commence thirty days from the date of the filing of the opinion in this case. Prior to termination of the suspension, Sheehy shall pay all costs of the disciplinary proceedings.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE BV15 c FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST DONALD JOSEPH SHEEHY.

CHARLES E. ORTH, Jr., Retired, Specially Assigned Judge, dissenting:

I agree with the majority that Sheehy's conduct was extremely serious. I do not agree that it does not warrant

disbarment. In view of his admitted acts and the disciplinary rules he concedes those acts violated, he has demonstrated that he is not fit to retain the privilege to practice law. It is clear that the proper sanction here is disbarment, and I would impose that sanction.