477 A.2d 1185

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**Richard Allen JAMES.**

**Misc. (BV) No. 9, Sept. Term, 1983.**

Court of Appeals of Maryland.

July 13, 1984.

Melvin Hirshman and Walter D. Murphy, Jr., Bar Counsel and Asst. Bar Counsel, Annapolis, for petitioner.

Edward P. Camus, Riverdale, for respondent.

Argued Before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

COLE, Judge.

The Attorney Grievance Commission, through Bar Counsel, instituted this disciplinary proceeding against Richard Allen James, a member of the Maryland Bar. Bar Counsel has recommended disbarment on the basis of James' alleged misconduct in two separate legal matters, the "Coverdale" case and the "Scott" case, misconduct for which James has

been suspended from the District of Columbia bar for two years. *See Matter of James*, 452 A.2d 163 (D.C.App.1982). For the reasons set forth below, we suspend James from the practice of law in this State for two years.

Pursuant to Md. Rule BV9 *et seq.* we referred the matter for hearing before Judge George Bowling of the Circuit Court for Prince George's County. Judge Bowling regarded the factual findings in the District of Columbia proceeding as conclusive as required by Maryland Rule BV10 e 1.[1] James introduced additional evidence "in mitigation" in an attempt to reduce the sanction pursuant to Rule BV10 e 2.[2] The factual findings in the District of Columbia proceeding, as summarized below by Judge Bowling, were as follows:

*A. The Coverdale Case.*

In September 1978, Respondent was retained by Louvenia Coverdale to represent her as a Defendant in a personal injury action. In October, 1979, Mrs. Coverdale agreed to pay the Plaintiff $1,250.00 in settlement of the dispute, and the suit was dismissed. Respondent billed her $1,500.00 for his services. She proposed to satisfy her obligations in monthly installments of $400.00, with half of each payment going to the Plaintiff to satisfy the

---

1. Rule BV10 e 1 provides:

    In a hearing of charges pursuant to this Rule, a final judgment by a judicial tribunal in another proceeding convicting an attorney of a crime shall be conclusive proof of the guilt of the attorney of that crime. A plea or verdict of guilty, or a plea of *nolo contendere* followed by a fine or sentence, is a conviction within the meaning of this Rule. A final adjudication in a disciplinary procceding by a judicial tribunal or a disciplinary agency appointed by or acting at the direction of a judicial tribunal that an attorney has been guilty of misconduct is conclusive proof of the misconduct in the hearing of charges pursuant to this Rule.

2. Rule BV10 e 2 provides:

    The introduction of evidence in a proceeding pursuant to this Rule of an attorney's conviction of a crime in a judicial tribunal or adjudication of misconduct by a judicial tribunal, does not preclude the Commission from introducing additional evidence nor does it preclude the attorney from introducing evidence or otherwise showing cause why he should not be disciplined.

settlement, and half to Respondent in payment of his fee. After the Plaintiff rejected this arrangement, Mrs. Coverdale proposed to Respondent that the full amount of each installment be paid to the Plaintiff until the settlement was satisfied, and that subsequent payments be applied to the fee. According to Mrs. Coverdale's testimony, which was accepted by the Hearing Committee and the Board, Respondent accepted this arrangement and promised to implement it on her behalf. Thereafter, Mrs. Coverdale gave Respondent $350.00 in November, 1979, and payments of $400.00 each in the succeeding three months. However, Respondent made no effort to transfer funds to the Plaintiff, and, without informing the client, deposited the payments in his personal professional account.

In December, 1979 or January, 1980, the Plaintiff's counsel informed Respondent that he would seek judicial relief from the Order of Dismissal. Respondent then advised Mrs. Coverdale to suspend her payments until the court acted on the Plaintiff's motion. On April 30, a hearing on the motion was held. Respondent, appearing without his client, told the court that his client had paid only $350.00 toward the settlement, and had not sent him any funds for three months. He failed to inform the court that payments were suspended on his own advice, and stated instead that his client was unable to pay any faster. He concurred in Plaintiff's contention that Mrs. Coverdale had breached her agreement, and suggested that the Plaintiff could attach her property to enforce it. The court stated that the motion would be denied if the full $1,250.00 was paid immediately. Respondent neither informed the court that his client had already paid him an amount sufficient to cover the settlement, nor offered to pay it forthwith. Instead, he requested fifteen (15) days to attempt to raise the money. The court then granted the motion setting aside the settlement.

Respondent told Mrs. Coverdale that the reason the settlement was set aside was that the entire amount had

not been paid within fifteen (15) days of the settlement. He failed to inform her that the motion would have been denied if the full amount had been paid as of the hearing date.

*B. The Scott Case.*

In November, 1979, Walter and Saundra Scott retained Respondent to aid them in renegotiating a lease on a building they owned, and in selling the property. Due to substantial losses incurred on the building, the Scotts were eager to dispose of it. After efforts to sell to third parties had failed, Mr. Scott suggested that Respondent buy the property. Respondent then drafted two documents. The first was a contract to sell the building to Respondent for $40,000.00. The second suggested that the Scotts would retain an equitable interest and that the sale proceeds would be applied to the maintenance of the property, after satisfaction of existing liens. Upon subsequent resale, the net proceeds would be divided equally between Respondent and the Scotts. However, the contract did not expressly require Respondent to sell the building, and did not establish time limits for its rehabilitation or sale. Neither did it establish whether the Scotts would be entitled to any part of future rents collected, or provide for contingencies that might interfere with the performance of the arrangement, such as Respondent's death.

Respondent reviewed the documents with the Scotts for about an hour, after which the contracts were executed. It was agreed that the second agreement would not be disclosed to third parties, so that the tenant would not learn of the true nature of the sale. Respondent's share of the net proceeds would be in lieu of a prior hourly fee arrangement. Respondent subsequently testified that he had suggested that the Scotts consult independent counsel, but the Scotts could not recall such a suggestion. Due to difficulties in obtaining necessary approvals from the District of Columbia Rental Accommodations Office, the contracts were never carried out.

Judge Bowling then accepted the District of Columbia findings that James' conduct in these two matters violated the following disciplinary rules: DR 1–102(A)(4) (conduct involving dishonesty, fraud, deceit, or misrepresentation); DR 1–102(A)(5) (conduct prejudicial to the administration of justice); DR 6–101(A)(3) (neglect of legal matters); DR 7–101(A)(1)–(3), (intentionally failing to seek the lawful objectives of the client, failing to carry out a contract for legal services, prejudicing client in the course of professional relationship); DR 9–102(A) (failing to maintain client funds in separate account); DR 5–104(A) (failing to make full disclosure to protect clients from conflict of interest). The trial judge also found additional violations not found in the District of Columbia proceeding: violations of DR 7–102(A)(3), (5), and (8) (concealing or knowingly failing to disclose a matter required by law to be revealed, knowingly making a false statement of fact, knowingly engaging in other illegal conduct or conduct contrary to a Disciplinary Rule).

The court then found several "mitigating circumstances" based on James' additional submissions at the hearing below:

1. The Respondent was not represented by counsel at the hearing before the Hearing Committee in the District of Columbia.

2. Character testimony has been offered by several reputable members of the Bar of Prince George's County who attested to the competence of the Respondent and to his positive reputation in the community for honesty and truthfulness.

3. All of the evidence presented to this Court, as well as the findings of fact may by the Hearing Committee, clearly show that no loss was suffered by any of the parties.

4. Testimony was offered by a certified public accountant which showed that the Respondent's personal account, as well as his professional account, were more than sufficient to cover any obligation to Mrs. Coverdale

for money which was found by the Hearing Committee of the District of Columbia to have been held by him for the settlement of her pending litigation.

■ We find, based on our examination of the record, that the trial judge's findings are not clearly erroneous, so we accept them here. Our next task, therefore, is to determine the appropriate sanction. Bar Counsel recommends disbarment, principally because "this is a case of misappropriation of client's funds." James, on the other hand, maintains that this is not a typical misappropriation case because he did not take any money that he was not in any event entitled to take; *i.e.,* the money sent to him by Coverdale was simply applied to his fee, a fee that Coverdale conceded she owed him.

The trial court's findings in this regard are less than clear. The court found, without discussion, that James violated DR 9–102(A), which provides:

Disciplinary Rule 9–102

Preserving Identity of Funds and Property of a Client

(A) All funds of clients paid to a lawyer or a law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:

1. Funds reasonably sufficient to pay bank charges may be deposited therein.

2. Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.

Yet the trial court never stated in so many words whether any misappropriation took place, nor did it pass on James' alleged violation of Md.Code Art. 10, § 44, which states:

§ 44. Duty of Attorney.

(a) If any attorney is entrusted with, or receives and accepts, or otherwise holds, deposit moneys or other trust moneys, of whatever kind or nature, such moneys, in the absence of written instructions or court order to the contrary shall be expeditiously deposited in an account maintained as a separate account or accounts for funds belonging to others. In no event shall he commingle any such funds with his own or use any such funds for any purpose other than the purpose for which such funds were entrusted to him.

(b) Any attorney wilfully violating the provisions of this section shall be charged with professional misconduct, malpractice, or conduct prejudicial to the administration of justice and shall be proceeded against for reprimand, suspension, or disbarment under any applicable provision of this article or any other law or the Maryland Rules.

(c) Any attorney wilfully violating the provisions of this section, in addition to the penalties set forth in subsection (b) hereof, shall be guilty of a misdemeanor for each such violation and on conviction thereof, shall be fined not more than five thousand (5,000.) or be imprisoned for not more than five (5) years, or both in the discretion of the court.

In the District of Columbia proceeding, the Court of Appeals found that there had been a "misuse of client funds." 452 A.2d at 170. This conclusion was based on the Report and Recommendation of the District of Columbia Board on Professional Responsibility, which found that a misappropriation of client funds had occurred. The report stated:

We have previously held that while intentional misappropriation of a client's funds generally warrants disbarment, *see, e.g., In re Burka,* 423 A.2d 181 (D.C.App.1980),

commingling of funds based on a good faith misunderstanding may call for a much less severe sanction. *See In re Dwyer*, Nos. 356–78, 374–78 (Bd.Prof.Resp., Dec. 4, 1980) (three-month suspension); *In re O'Bryant*, No. 320–78 (Bd.Prof.Resp., June 13, 1980) (six-month suspension). We view Respondent's commingling here as far more serious than in *Dwyer* or *O'Bryant*, since we have concluded that Respondent knew of his client's intention that these funds be used first to pay her settlement obligation. On the other hand, the facts here do not rise to the level of a typical misappropriation case, such as *Burka*, since Respondent did not take any money to which he [ultimately] would not have been entitled; instead, his main misdeed came in unilaterally deciding to pay himself first, despite his client's intent to defer his payment and to use these funds for other, more pressing purposes. Thus, based upon the commingling alone, we would probably recommend a suspension of approximately one year. In our view, however, Respondent seriously compounded his wrongdoing by the evasions and misrepresentations he engaged in with the court and his client in an apparent effort to escape from the problems he had created for himself.

District of Columbia Court of Appeals Board on Professional Responsibility, *Report and Recommendation* at 21–22 (July 17, 1981).

■ In our view, the sanction imposed by the District of Columbia Court of Appeals that James be suspended from the practice of law for two years is appropriate. We are mindful that in the District of Columbia, a suspension for more than one year places the burden on the attorney, after the period of the suspension has lapsed, to prove that he has been rehabilitated; the suspension is not lifted until he makes such a showing. *See* D.C.App.R. XI, § 21; *Matter of Kerr*, 424 A.2d 94 (D.C.App.1980).

We, too, shall suspend James from the practice of law in this State for two years. He shall remain suspended beyond that time unless he has applied for readmission, and

has been readmitted to the Bar of the District of Columbia. *See Attorney Grievance Commission v. Sheehy,* 298 Md. 371, 470 A.2d 341 (1984).

The Respondent's suspension shall commence thirty days from the date of the filing of this opinion. Prior to termination of the suspension, James shall pay all costs of these disciplinary proceedings.

IT IS SO ORDERED.

RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS PURSUANT TO MARYLAND RULE BV 15c FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST RICHARD ALLEN JAMES.