735 A.2d 1027

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

**Richard Allen JAMES.**

**Misc. AG No. 73 Sept. Term, 1997.**

Court of Appeals of Maryland.

Aug. 24, 1999.

**466**

468

Melvin Hirshman, Bar Counsel and Glenn M. Grossman, Deputy Bar Counsel for the Attorney Grievance Commission of Maryland, for petitioner.

M. Albert Figinski, Baltimore, for respondent.

Argued before BELL, C.J., ELDRIDGE, RODOWSKY, RAKER, WILNER and CATHELL and ROBERT L. KARWACKI (retired, specially assigned), JJ.

RODOWSKY, Judge.

Richard Allen James (James) was admitted to the bar of this Court in June 1971. He is also admitted to practice in the District of Columbia and maintains an office there. This is the fourth time that he has appeared before us as the respon-

dent in an attorney disciplinary matter. In 1984, we suspended James from the practice of law for a minimum of two years. *Attorney Grievance Comm'n v. James*, 300 Md. 297, 477 A.2d 1185 (1984) (*James I* ). Nine years later, in *Attorney Grievance Commission v. James*, 333 Md. 174, 634 A.2d 48 (1993) (*James II* ), this Court suspended James for one year, from January 12, 1994, to January 12, 1995. The misconduct established in *James II* involved the use of deception to circumvent a statutorily mandated procedure for processing, through the Division of Parole and Probation, checks for restitution payments. *Id.* at 183, 634 A.2d at 52.

Shortly before January 12, 1995, James filed with Bar Counsel the affidavit required by then Maryland Rule BV13 a 2.[1] Following an investigation, Bar Counsel responded that James " 'has violated the terms of his suspension by engaging in the practice of law during the period of this suspension.' " *Attorney Grievance Comm'n v. James*, 340 Md. 318, 320–21, 666 A.2d 1246, 1247 (1995) (*James III* ). At the time of his suspension James had maintained an office for the practice of law in Greenbelt, Prince George's County, and we referred the matter to Judge Graydon S. McKee, III of the circuit court for that county for an evidentiary hearing. *Id.* at 321, 666 A.2d at 1247. Judge McKee found that James had engaged in conduct constituting the practice of law between January 1994 and January 1995. We overruled exceptions to Judge McKee's findings. "Inasmuch as James never served the one year suspension imposed in *James II* we order[ed] that James serve the suspension of one year for the violations that he committed, as determined in *James II.*" *Id.* at 333, 666 A.2d at 1253.

---

**1.** Then Maryland Rule BV13 a 2 (now Rule 16–713 a 2) provides that, upon expiration of a period of suspension, the attorney may practice law

"only after (a) the attorney files with the Bar Counsel a verified statement that the attorney has complied in all respects with the terms of the suspension and (b) Bar Counsel notifies the Clerk that the statement has been filed and Bar Counsel is satisfied that the attorney has complied with the terms of the suspension."

The one-year period of the suspension reimposed in *James III* expired November 12, 1996. James, however, never filed an affidavit that he "has complied in all respects with the term of the suspension" reimposed in *James III*. As a result, James has been suspended continuously since January 12, 1994, to date.

In *James III* this Court carefully noted that

"[o]ur disposition deals only with the sanction imposed for the misconduct in *James II*. Whether any disciplinary proceedings should be undertaken concerning the activities of James, or of any other or others, during the time when James should have honored the order of suspension filed in *James II* is a matter for Bar Counsel to determine in the first instance."

*Id.*

In January 1998, the Attorney Grievance Commission (the Commission) petitioned this Court for disciplinary action against James, alleging that he had continued to practice law after having been suspended as of January 12, 1994, in *James II*. Essentially, the petition alleged the facts that had been found by Judge McKee in *James III*, from which this Court concluded that James had never served the one year suspension beginning January 12, 1994. The petition additionally alleged that James had represented William Wrubleski (Wrubleski) and Rasheed Jackson (Jackson) during the *James II* suspension period of 1994–1995. James was charged, *inter alia*, with violating Maryland Rule of Professional Conduct 5.5 (Unauthorized Practice of Law). We transmitted the matter to Judge James J. Lombardi of the Circuit Court for Prince George's County for hearing.

At the hearing Judge Lombardi accepted as established the facts on which this Court in *James III* had based the reimposition of the *James II* suspension and took testimony related to James's representation of Wrubleski and Jackson. James produced evidence that he was an alcoholic and that his alcoholism had substantially impaired his judgment, resulting

in his failure to comply with his suspension. James further produced evidence that, since July 1996, he had been sober.

Judge Lombardi filed his report with this Court in August 1998. He concluded that the conduct on which the Commission's allegations were based had been conclusively established in *James III*. Judge Lombardi also found that it was undisputed that James practiced law while suspended by representing Wrubleski and Jackson. He focused his analysis on James's evidence in mitigation, concluding that "it is more likely than not that [James] was affected by his alcoholism in continuing to practice law during his period of suspension."

While the hearing in this Court on the report was pending, Bar Counsel moved to remand the matter to Judge Lombardi to hear additional evidence bearing on mitigation. James opposed the remand, arguing that no evidence on new allegations had been presented to an Inquiry Panel or to the Review Board and could not be considered by Judge Lombardi in the first instance. This Court granted the remand, and, in effect, deferred ruling on James's procedural objection until our decision on all issues.

At the hearing on remand, Bar Counsel called Bernice Roane, who testified that James had assisted her from his office in Greenbelt on three legal matters. First, she stated that James drew up wills for her and her husband in September 1997. The Roanes had first met James by happenstance while they were in the lobby of his building for the purpose of having wills prepared by another attorney whom they did not know, at which time James offered to draw up the wills for them. James gave Mrs. Roane his card identifying himself as an attorney and listing only the Greenbelt office address and telephone number. At his office the Roanes paid James $250 for the two wills. Both wills are dated September 9, 1997, were executed in James's office, and were witnessed by James and his secretary.

Second, after Mrs. Roane's husband died in January 1998, James assisted her at his Greenbelt office with certain annui-

ties left by her husband. She paid James $2,000 for these services.

Third, in November 1997 James assisted her in filing the will of her recently deceased aunt in the District of Columbia. James charged her $500, but later returned the fee.

James testified that he had sent Mr. Roane some professional cards in the late 1980s or early 1990s on other matters. He said that he prepared the Roanes' wills at his D.C. office and only met the clients in Greenbelt out of consideration for Mr. Roane's age and poor health, and that he worked on the annuities out of his D.C. office. Judge Lombardi found "that Mr. James practiced law in Maryland pursuant to the testimony of Mrs. Roane."

In his findings of fact on remand, Judge Lombardi related James's conduct, as described by Mrs. Roane and beginning well after James had stopped drinking, to the report previously submitted to this Court. The judge stated that he had been "very impressed" with testimony presented during the July 1998 hearing that James's "alcoholism was directly related to his impaired judgment in continuing to practice law." Nevertheless, "[t]his [new evidence] changes that." Because James had been sober since July 1996, Judge Lombardi found "that this practice of law during this '97–'98 period is not affected by his alcoholism," thereby seriously undermining the prior mitigation testimony. Consequently, Judge Lombardi withdrew his earlier finding that James "was affected by his alcoholism in continuing to practice law during his period of suspension." He found "that the respondent engaged in the unlawful practice of law from August 1997 through April 1998."

James has taken seven exceptions to Judge Lombardi's report. We shall consider each exception individually, stating additional facts as necessary to the consideration of the issue.

## I

▪ James excepts to the introduction of Mrs. Roane's evidence at the hearing on remand without that evidence first having been submitted to an Inquiry Panel. He considers the

Roane evidence to constitute charges of additional violations of Rule 5.5 by him, so that the evidence should have been presented first to an Inquiry Panel as required by Rule 16–706 a.

Rule 16–706 provides, in relevant part:

"a. *Bar Counsel.* 1. Filing and investigation. Every complaint that an attorney has committed an act of misconduct or that he is incompetent shall be filed with and recorded by the Bar Counsel. The Bar Counsel shall investigate each complaint.

. . . .

"4. Reference to Inquiry Panel. Unless a complaint is dismissed or an Inquiry Panel proceeding has been dispensed with pursuant to Rule 16–706, the Bar Counsel shall refer the complaint to an Inquiry Panel and give notice of the complaint to the attorney against whom the complaint has been made. The notice shall inform the attorney of the nature of the complaint made. In unusual or extraordinary circumstances, the Bar Counsel, in his discretion, may defer giving notice to the attorney for a reasonable time.

"b. *Inquiry Panel proceeding not required.* 1. When not required. An Inquiry Panel proceeding is not required in a case where either:

"(a) Both the attorney complained against and the Bar Counsel waive an Inquiry Panel proceeding in writing; or

"(b) The complaint is either (i) that there has been a final judgment of conviction as defined by Rule 16–710 e 1 of a crime punishable by imprisonment for more than one year; or (ii) that the attorney has been adjudged guilty of misconduct by a judicial tribunal in a disciplinary proceeding as defined by Rule 16–710 e 1 and that the adjudication of misconduct has become final."

In the motion for remand Bar Counsel submitted that "[e]vidence that the Respondent continued to engage in the unauthorized practice of law during a period over one and a half years removed from his last drink would, it is submitted, cast doubt on any finding that the misconduct was

causally connected to alcoholism and would demonstrate further evidence of the disregard by the Respondent of this Court's Order of Suspension."

The purpose of introducing the Roane evidence was not to prove additional violations of Rule 5.5, by James's representing the Roanes in various matters while he was suspended, in order to impose discipline on James for those uncharged violations. The purpose was to rebut James's evidence of mitigation. As Judge Lombardi said:

"Dr. [Lion] testified that Mr. James' alcoholism was directly related to his impaired judgment in continuing to practice law. I didn't hear any testimony to the contrary, and so I credited that testimony as being more likely so than not so in contributing to his impaired judgment.

"This changes that. Accordingly, 1 feel that this practice of law during this '97–'98 period is not affected by his alcoholism and I think that seriously undermines the testimony of both Mr. Vincent and Dr. [Lion], so, accordingly, I will withdraw my recommendation for mitigation."

James rests his argument exclusively on Rule 16–706 and asserts that the "skirting" of the Rule is "unprecedented." We note that James does not argue that the conduct described in the Roane evidence is inadmissible under Maryland Rule 5–404(b). Yet, the effect of James's argument is that evidence of prior "bad acts" that might be the basis for disciplinary charges and which is admissible under Rule 5–404(b) would be inadmissible in a disciplinary proceeding in which the evidence had special relevance, unless the evidence had been the subject of an Inquiry Panel proceeding. That is not the intent of Rule 16–706. The rule is a filter for charges, not for evidence.

Further, precedent for the use of such "bad acts" evidence is *James III.* 340 Md. 318, 666 A.2d 1246. In *James III* the conduct that is now charged in this case for the purpose of imposing discipline was proved, not to impose discipline for that conduct, but for the purpose of showing in *James III* that James had never complied with the sanction imposed for the

misconduct charged and proved in *James II*, 333 Md. 174, 634 A.2d 48.

## II

In this Part II we address the only exception filed by James that attacks the findings of violations in the Wrubleski and Jackson matters. James argues that Judge Lombardi erred in omitting from his August 1998 opinion the fact that James received no compensation for representing Wrubleski and Jackson during 1994–1995, the period of the suspension imposed in *James II*. James did testify that he did not request nor receive payment for the legal services he provided to Wrubleski and Jackson.

While this Court has recognized that it "has always found it difficult to craft an all encompassing definition of the 'practice of law,'" it has stated that "[t]o determine whether an individual has engaged in the practice of law, the focus of the inquiry should 'be on whether the activity in question required legal knowledge and skill in order to apply legal principles and precedent.'" *Attorney Grievance Comm'n v. Hallmon*, 343 Md. 390, 397, 681 A.2d 510, 514 (1996) (quoting *In re Discipio*, 163 Ill.2d 515, 523, 206 Ill.Dec. 654, 645 N.E.2d 906, 910 (1994)).

The fact that James did not receive a fee for his legal services does not preclude a finding that he acted as the attorney for Wrubleski and Jackson during the suspension.

"Although an agreement upon the amount of a retainer and its payment is rather conclusive evidence of the establishment of the attorney-client relationship, the absence of such an agreement or payment does not indicate conclusively that no such relationship exists. Indeed, the payment of fees is not a necessary element in the relationship of attorney and client. The services of an attorney to the client may be rendered gratuitously but the relationship of attorney and client nonetheless exists."

*Central Cab Co. v. Clarke*, 259 Md. 542, 549–50, 270 A.2d 662, 666 (1970); *accord Attorney Grievance Comm'n v. Shaw*, 354

Md. 636, 648–49, 732 A.2d 876, 882 (1999). The absence of a fee is not a basis for sustaining the exception.

## III

James's next exception goes to the reasons stated by Judge Lombardi for concluding that all of the conduct charged in the present case was conclusively established by the judgment in *James III*, with the exception of the Wrubleski and Jackson matters. The conduct charged by Bar Counsel in the instant matter is set forth in paragraphs four through fifteen of the Petition for Disciplinary Action, which we set forth in the margin.[2] These allegations had been referred as complaints

---

2. Paragraphs four through fifteen read:

"4. In *Attorney Grievance Commission v. James*, 333 Md. 174, 634 A.2d 48 (1993) (*James II*) this Court suspended the Respondent from the practice of law for one (1) year. The effective date of the commencement of the Respondent's suspension was January 12, 1994.

"5. During the period of his suspension, the Respondent continued in the practice of law in violation of the Order of Suspension.

"6. During the period of his suspension, the Respondent continued to maintain an office from which he practiced law at Suite 110, 7500 Greenway Center Drive, Greenbelt, Maryland. The office building directory continued to list the Respondent as an attorney-at-law and the words 'law office' were displayed on a sign affixed next to the door of his suite.

"7. During the period of his suspension, the Respondent permitted his Bell Atlantic telephone directory listings to remain unchanged. For the directory published for use in October 1994 through September 1995, the Respondent was listed in the classified section under 'Lawyers.' In the white pages of the same directory, he was described in bold type as an attorney.

"8. During the period of his suspension, the Respondent ... held himself out in The Suburban One Book telephone directory, published for use in 1994 through 1995, as an attorney in the white pages and was listed with lawyers in the classified pages.

"9. The secretary employed by the Respondent during his suspension was instructed to answer the telephone 'law offices.' If the telephone call was for the Respondent, she was instructed to take a message. She failed to inform callers that the Respondent was suspended.

"10. During the period of the Respondent's suspension, Eugene Brennan, Esquire (hereinafter 'Brennan') practiced law from the same office as the Respondent. Brennan was asked by James to

to an Inquiry Panel which recommended that charges be filed against James for these alleged violations as well as for violations based on the Wrubleski and Jackson matters.

When the charges were heard before Judge Lombardi he ruled, over objection by James, that it was unnecessary for Bar Counsel to prove the allegations of paragraphs four through fifteen of the Petition for Disciplinary Action because the facts underlying these allegations had already been conclusively established by the judgment in *James III*. Both from the bench at the time of ruling, and in his report, Judge Lombardi based his ruling on Maryland Rule 16–710 e 1, presumably on that portion reading: "A final adjudication in a disciplinary proceeding by a judicial tribunal or a disciplinary agency appointed by or acting at the direction of a judicial tribunal that an attorney has been guilty of misconduct is conclusive proof of the misconduct in the hearing of charges pursuant to this Rule."

■ James submits that the proceedings in *James III* were not a proceeding in which "an attorney has been [found] guilty of misconduct," and, therefore, that Judge Lombardi errone-

---

assist in keeping his office open. Brennan ostensibly was to take over the cases of the Respondent's clients.

"11. The Respondent failed to notify his clients, opposing counsel or parties of his suspension from the practice of law.

"12. Although Brennan did enter his appearance on behalf of a number of Respondent's clients, Respondent failed to strike his appearance from cases pending in Maryland.

"13. Papers filed in Court were drafted by the Respondent but signed in Brennan's name by the Respondent. Affidavits of service, notarized by Respondent's secretary, were signed by the Respondent in Brennan's name.

"14. During the period of his suspension, the Respondent represented Santina Romano in connection with a personal injury claim. The Respondent signed a stipulation of dismissal in his own name and said dismissal was filed in the Circuit Court for Prince George's County at a time when the Respondent was suspended from the practice of law.

"15. During the period of his suspension, the Respondent represented Margaret Orimogunje in connection with her personal injury claim. The Respondent negotiated on Ms. Orimogunje's behalf with one or more insurance adjusters at a time when the Respondent was suspended from the practice of law."

ously relieved Bar Counsel of the burden of proving the matters charged in paragraphs four through fifteen of the petition by clear and convincing evidence. The point is well taken.

*James III* did not arise on a petition for disciplinary action in which charges were made against James for the purpose of imposing discipline on those charges, if established. *James III* arose on what is now Rule 16–713 a 2 to determine whether James had complied in all respects with the terms of his suspension in *James II*. That issue had been joined by Bar Counsel's conclusion that James had not complied, a conclusion that prevented the Clerk of this Court from replacing James's name upon the register of attorneys and effectively continued the suspension until this Court ruled. The most common applications of the above-quoted portion of Rule 16–710 e are reciprocal discipline cases. *See, e.g., Attorney Grievance Comm'n v. Richardson*, 350 Md. 354, 365, 712 A.2d 525, 530 (1998); *Attorney Grievance Comm'n v. Sabghir*, 350 Md. 67, 79, 710 A.2d 926, 931–32 (1998); *Attorney Grievance Comm'n v. Gittens*, 346 Md. 316, 324, 697 A.2d 83, 87 (1997). Consequently, James's exception reviewed in this Part III is sustained.[3] This ruling does not, however, affect the finding of additional violations by James in the Wrubleski and Jackson matters.

## IV

James argues that Judge Lombardi erred in refusing to permit Dr. John R. Lion, a forensic psychiatrist, to testify to

---

3. Bar Counsel does not seek to sustain the use of the findings from *James III* on the alternate ground of issue preclusion. Indeed, at the hearing before Judge Lombardi, Bar Counsel disclaimed reliance on issue preclusion, reasoning that the burden of proof was upon James in *James III*, whereas the burden was upon the Commission in the instant matter. Although we specifically noted in *James III* that Judge McKee had "stated that he was 'thoroughly convinced by the evidence that [James's] violations were not inadvertent,' " and although we specifically did not rest our decision in *James III* on the failure of James to meet his burden of proof under present Rule 16–713 a 2, see *James III*, 340 Md. at 333 & n. 5, 666 A.2d at 1253 & n. 5, we express no opinion on the possible application of issue preclusion in this case.

the lack of danger to James's clients or to the public if his suspension were lifted. The submission is that, because the purpose of disciplinary proceedings is not punishment but is to protect the public, the evidence should have been allowed.

It is true that "[d]isciplinary proceedings for professional misconduct are not criminal proceedings. Their purpose is to protect the public by determining a lawyer's fitness to practice law." *Attorney Grievance Comm'n v. Stewart*, 285 Md. 251, 258, 401 A.2d 1026, 1029, *cert. denied*, 444 U.S. 845, 100 S.Ct. 89, 62 L.Ed.2d 58 (1979). James, however, unduly restricts this "protection of the public" determination.

"The disbarment of an attorney protects the public not only from being further victimized by the attorney himself, but also ... it protects the public 'because it demonstrates to members of the legal profession the type of conduct which a court will not tolerate,' and is necessary 'to preserve the integrity of the legal and judicial system of Maryland.'"

*Attorney Grievance Comm'n v. Kahn*, 290 Md. 654, 683, 431 A.2d 1336, 1351–52 (1981) (citations omitted) (quoting *Attorney Grievance Comm'n v. Kerpelman*, 288 Md. 341, 382, 420 A.2d 940, 959 (1980), *cert. denied*, 450 U.S. 970, 101 S.Ct. 1492, 67 L.Ed.2d 621 (1981), and *Maryland State Bar Ass'n v. Callanan*, 271 Md. 554, 557, 318 A.2d 809, 810 (1974), respectively).

James's argument assumes that, so long as his ability to represent his clients is adequate, he poses no danger to the public and his suspension should be lifted. This argument leads to the incongruous scenario in which this Court would not be able to enforce its orders of suspension. Actually, James's disregard for this Court's order suspending him from the practice of law threatens the integrity of the legal profession and of the judicial system, and constitutes the sort of conduct that must be deterred for the protection of the public.

## V

James excepted to Judge Lombardi's failure to find in his initial report that James's alcoholism affected his entire life.

Following the second report in which the hearing judge found that alcoholism is not a mitigating factor, James has renewed that exception.

During the initial hearing, Dr. Lion testified, "It is my opinion that the alcoholism caused him to have impaired judgment." Judge Lombardi questioned Dr. Lion about the nature of James's impaired judgment:

"THE COURT: ... What this case is all, it's not about being a threat to clients. It's about whether this alcohol problem that he had so impaired his judgment that he practiced law while he was suspended, and you said yes, he did. It was a role, played a role.

"THE WITNESS: Yes.

"THE COURT: Now, can you give us any examples as to any other impaired judgment that you found other than in this one area where he practiced law while he was suspended?

"THE WITNESS: No, Your Honor, I can't. That's the main manifestation of the impaired judgment, he wished to practice.

"THE COURT: So he could have, to put it another way, he could have exercised sound judgment in all other areas, notwithstanding his alcoholism, but exercise bad judgment in this area that's the subject of this inquiry in practicing law while he was suspended, and that would, and you would be comfortable with that as a diagnosis? Correct?

"THE WITNESS: That's correct, Your Honor.

"THE COURT: All right. Thank you."

Based on this testimony, Judge Lombardi noted in his initial report:

"To a layman it appears difficult to understand how James' alcoholism during the period of suspension can be isolated only to his decision to continue the practice of law and not spill over into other areas of his life. There is *no evidence* that he practiced incompetent law or *that it affected any-*

*thing else he did.* Although Ms. Fitch says it must have neither she nor Dr. Lion could give any other examples." (Emphasis added.)

Frances Fitch (Fitch), the witness mentioned above, was James's substance abuse counselor or psychotherapist who testified on his behalf. Fitch testified that James's alcoholism impaired his judgment in other areas of his life in addition to the decision to continue to practice law. James argues that Judge Lombardi's statement of "no evidence" was clearly erroneous.

▮ Judge Lombardi's discussion of the limited effect of James's alcoholism is part of a section of his initial report in which he is expressing skepticism as to whether James's alcoholism was a cause of practicing while suspended. In his first report he concludes, by a preponderance of the evidence, that there was a causal connection. After hearing the Roane evidence, Judge Lombardi found to the contrary. He was not obliged to accept the Fitch testimony over the Lion testimony. Further, James had the opportunity at the hearing on remand to call attention to the Fitch evidence and to argue that the finding concerning mitigation should be made with that evidence in mind.

## VI

▮ James argues that Judge Lombardi could not find by clear and convincing evidence that James practiced law between August 1997 and April 1998. James asserts that the only evidence supporting this allegation, the testimony of Mrs. Roane at the December 11, 1998 hearing, was rebutted by his testimony. The short answer to this exception is that it presents an issue of credibility which was for the hearing judge to decide. "It is elementary that a trier of fact may elect to pick and choose which evidence to rely upon," *Attorney Grievance Comm'n v. Nothstein*, 300 Md. 667, 684, 480 A.2d 807, 816 (1984), and the hearing judge "may base his findings on the testimony of a single witness." *Attorney*

*Grievance Comm'n v. Boyd,* 333 Md. 298, 307, 635 A.2d 382, 386 (1994).

 Further, the finding based on Mrs. Roane's evidence need not have been made under the clear and convincing standard. Rule 16–710 d provides that in the hearing of charges "[f]actual findings shall be supported by clear and convincing evidence." This Court has previously explained the relationship between this standard and the preponderance of the evidence standard.

"The 'clear and convincing' standard of Rule [16–710 d] applies to the measure of proof imposed upon the Attorney Grievance Commission in factual determinations *essential to establishing its case against the attorney.* It does not apply to factual matters sought to be established by the attorney in defense of the attorney's position, including whether mitigating circumstances have been shown. As to this, the preponderance of the evidence standard is the applicable measure of proof."

*Attorney Grievance Comm'n v. Bakas,* 322 Md. 603, 606, 589 A.2d 52, 53 (1991) (emphasis added) (citation omitted).

 Only the findings of fact supporting Bar Counsel's allegations of misconduct must be supported by clear and convincing evidence. Where Bar Counsel introduces evidence solely to rebut mitigating circumstances, such rebuttal evidence need only lessen or negate the weight of the attorney's mitigating evidence to the point that the fact finder is not persuaded by a preponderance of the evidence that the mitigating circumstances exist.

## VII

 James argues that the court wrongfully withdrew its recommendation for mitigation because his alleged unauthorized practice of law in 1997 and 1998 does not logically undermine the mitigation determination for the violations in 1994 and 1995. James inquires:

"While it surely may be said that the practice of law in '97–'98 was not affected by alcoholism, how did 'this new evidence'—relating solely to an occurrence in '97 and '98— 'undermine' testimony from experts which related to present sobriety and impact on events 'during an earlier period of suspension,' i.e., '94 and '95[?]"

In *Attorney Grievance Commission v. Kenney,* 339 Md. 578, 664 A.2d 854 (1995), this Court observed that "[i]n order for alcoholism to mitigate the attorney's conduct and warrant a sanction less severe than disbarment, we have held that the evidence before the hearing judge must be legally sufficient to establish a 'causal relationship between the misconduct and the alcoholism.'" *Id.* at 588–89, 664 A.2d at 859 (quoting *Attorney Grievance Comm'n v. White,* 328 Md. 412, 418, 614 A.2d 955, 959 (1992)). Significantly, however, this Court cautioned

"that in the future, absent truly compelling circumstances, alcoholism will not be permitted to mitigate where an attorney commits a violation of ethical or legal rules which would ordinarily warrant disbarment. Severe sanctions are necessary to protect the public from being victimized from any further dishonesty on the part of the attorney. We do, however, recognize that alcoholism is a serious medical condition and we will be more sympathetic to attorneys who recognize their need for assistance and seek to rehabilitate themselves before their transgressions are discovered. Nonetheless, we believe that when violations ordinarily warranting disbarment are found, our duty to protect the public is strong and we cannot permit alcoholism to alleviate an attorney's responsibility to recognize the wrongfulness of his or her actions and to honor his or her commitments to his or her clients."

*Id.* at 594–95, 664 A.2d at 862 (footnote omitted).

Judge Lombardi's August 1998 recommendation for mitigation was based on his finding, by a preponderance of the evidence, that it was James's alcoholism that impaired his judgment to continue to practice law in Maryland while under

suspension by this Court. The withdrawal, in December 1998, of that recommendation was based on Bar Counsel's new evidence that even though sober since July 1996, James continued to practice law during his suspension. Thus, Judge Lombardi concluded that James's proffered explanation for his misconduct in 1994 and 1995—his alcoholism—was "seriously undermine[d]" by the evidence that James was still engaging in the same misconduct three years later. Logically, if it were James's alcoholism that caused his misconduct, once he was sober the misconduct should have ceased. Because the misconduct had not ceased, and James could not sufficiently explain why it had not ceased, Judge Lombardi determined that James had not proved mitigation.

## VIII

For the foregoing reasons James's exception discussed in Part III, *supra,* is granted, and his remaining exceptions are denied. The result is that James has been found, by clear and convincing evidence, to have violated the suspension imposed in *James II* in two instances, the Wrubleski and Jackson matters. We now consider the appropriate sanction.

This is the third time that James has been found to have violated the Maryland Lawyers' Rules of Professional Conduct or the predecessor Disciplinary Rules. *James I* involved commingling that did not rise to the level of a typical misappropriation case. *James I,* 300 Md. at 305, 477 A.2d at 1189. James had received funds from the client to be used for an installment payment under an executory agreement of settlement of a claim against the client. He unilaterally decided to pay his fee first. *Id.* James " 'seriously compounded his wrongdoing by the evasions and misrepresentations he engaged in with the court and his client in an apparent effort to escape from the problems he had created for himself.' " *Id.* (quoting District of Columbia Court of Appeals Board on Professional Responsibility, *Report and Recommendation,* at 21–22 (July 17, 1981)). *James I* was a reciprocal discipline case, and James had been suspended for this conduct in the

District of Columbia for two years. *In re James,* 452 A.2d 163 (D.C.1982). The effect of that suspension in the District of Columbia was that it would not automatically be lifted until James had shown that he had been rehabilitated. *James I,* 300 Md. at 305, 477 A.2d at 1189. This Court similarly suspended James for two years, with the express proviso that he "remain suspended beyond that time unless he has applied for readmission, and has been readmitted to the Bar of the District of Columbia." *Id.* at 305–06, 477 A.2d at 1189.

The violation underlying the one year suspension imposed in *James II* involved the use of deception to circumvent a statutory scheme requiring restitution checks to be processed and disbursed by the Division of Parole and Probation. *James II,* 333 Md. at 183, 634 A.2d at 52. The proscribed conduct did not, however, involve misrepresentation for personal gain, and the hearing judge expressly found that James considered that he was acting in the best interest of his client. *Id.*

James never carried out the sanction imposed for the violation in *James II,* giving rise to the two additional violations that have been established in the instant matter. In addition to considering James's prior record of violations, we also consider the circumstances surrounding the violations. Those circumstances were proved in *James III* in support of our order that the suspension imposed in *James II* be served. Those circumstances are essentially set forth in the allegations of Bar Counsel in the instant matter. *See* note 2, *supra.* In effect, James simply continued to practice out of the same office, while using, for a period of time, another attorney as a facade. *Cf. Attorney Grievance Comm'n v. Brennan,* 350 Md. 489, 714 A.2d 157 (1998) (sanctioning the other attorney for, *inter alia,* assisting James in activity constituting the practice of law).

In the instant matter James sought to mitigate the additional violations and to minimize the circumstances surrounding those violations by claiming that alcoholism caused his distorted judgment. James's asserted mitigation disintegrated on

the remand to Judge Lombardi with evidence that he was violating his suspension in 1997. The result is a record that starkly reveals James's deliberate violation of the order of suspension that has continued since January 12, 1994.

Although this Court has not been required to impose a sanction for the particular type of gross misconduct that is presented here, the matter is addressed in Center for Professional Responsibility, American Bar Association, *Standards for Imposing Lawyer Sanctions* (1991 ed.). Standard 8.1 states in relevant part:

"Disbarment is generally appropriate when a lawyer:

"(a) intentionally or knowingly violates the terms of a prior disciplinary order and such violation causes injury or potential injury to a client, the public, the legal system, or the profession[.]"

The commentary to the above-quoted standard gives the following explanation:

"Disbarment is warranted when a lawyer who has previously been disciplined intentionally or knowingly violates the terms of that order and, as a result, causes injury or potential injury to a client, the public, the legal system, or the profession. The most common case is one where a lawyer has been suspended but, nevertheless, practices law. The courts are generally in agreement in imposing disbarment in such cases."

For these reasons the respondent, Richard Allen James, is disbarred forthwith.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–715 c FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION OF MARYLAND AGAINST RICHARD ALLEN JAMES.