## ATTORNEY GRIEVANCE COMMISSION OF MARYLAND v. LEONARD JEROME SPERLING

[Misc. (BV) No. 15, September Term, 1982.]

*Decided August 16, 1983.*

The cause was argued before MURPHY, C. J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

*Gerard P. Martin* for respondent.

*Glenn M. Grossman, Assistant Bar Counsel,* with whom was *Kendall R. Calhoun, Assistant Bar Counsel,* on the petition, for petitioner.

RODOWSKY, J., delivered the opinion of the Court.

This is an attorney discipline case. Respondent's client, in a deposition taken by the adversary, gave false testimony on a matter which was not directly germane to the issues in the lawsuit. Respondent, who was present as counsel for the client at the deposition, had no knowledge and was not chargeable with notice that his client was going to testify falsely. However, while the attorney knew upon hearing the testimony that it was false, he did nothing for over three years to attempt to have the client correct the record. We agree with the trial court's conclusion that DR 7-102 (B) (1) was violated and, under the circumstances of this case, shall sanction by reprimand. This issue is all that remains of a disciplinary proceeding which involved allegations of much more serious conduct.

The proceedings before us arise out of personal injury litigation. On the night of December 7, 1974, one Rodney L. Lasley (Rodney) while operating a motorcycle was involved in a head-on collision with an automobile. Rodney was very seriously injured. There were no passengers in or on either vehicle, and there were no known witnesses other than the two operators. The liability issue was which operator had crossed the centerline of the roadway. Through Rodney's fiancee, Peggy J. Wood (Peggy), who had previously worked briefly for the Respondent, Leonard Jerome Sperling (Sperling), the latter was employed to represent Rodney. Peggy and Rodney were married on February 5, 1975, while Rodney was still hospitalized as a result of his injuries. A picture of the wedding with a descriptive caption identifying the participants was carried in a Baltimore metropolitan area newspaper the next day. In the late summer of 1975, Sperling was advised that Peggy and Rodney had been

contacted by an eyewitness, Frances Gouker Brown (Brown), who had just made herself known to them. Brown was said to have connected Rodney to the accident witnessed by Brown through the newspaper picture. Peggy disclaimed to Sperling ever having previously met Brown. Sperling took a written statement from Brown on September 3, 1975 in which Brown placed herself as driving the second car behind Rodney in Rodney's lane. Brown said the on-coming automobile crossed the centerline. Brown denied ever having previously met Rodney or Peggy. In fact, but unknown to Sperling, Peggy and Brown had known one another since childhood, and Brown had been living for some months in Peggy's home during the period preceding and following the accident.

A suit naming both Rodney and Peggy as plaintiffs was filed by Sperling in the Circuit Court for Anne Arundel County. Defense counsel was suspicious of the eyewitness. Brown was deposed and denied any connection with Rodney or Peggy prior to the accident. Peggy was deposed on May 19, 1976 and similarly denied any connection with Brown prior to the accident. Defense counsel probed Peggy's background in detail, apparently in an effort to obtain leads which would make a connection between Peggy and Brown. The deposition included the following:

> Q. Have you ever worked as a secretary for any other person besides that Western Building?
>
> A. No.
>
> Q. You never worked as a secretary at any time at the present date for anyone else?
>
> A. Not as a secretary.
>
> Q. Have you ever worked in that capacity for anyone else other than anything that you described here today?
>
> A. Yeah; three days at the Hecht Company but I wasn't old enough to work and my mother found out and that was it.

Q. You never worked as a secretary for anyone else?

A. No.

Q. Did you ever work in any other capacity as administrative assistant, file clerk, account clerk or anything like that for anybody?

A. No.

. . . .

Q. Have you worked for any attorneys?

A. No.

Q. Never?

A. Nope.

Q. Are you positive of that?

A. Yep. Just the contractor.

Q. I beg your pardon?

A. Just the contractor was the only one I was a secretary for.

. . . .

Q. Do you know any attorneys by the name of Jacobs or Goldstein?

A. No.

Q. Had you ever been represented by or worked for any attorneys in the Blaustein Building in Baltimore City?

A. No.

Q. Have you ever been a witness to any accidents yourself?

A. Witness to any accident?

Q. Yes.

A. No.

. . . .

Q. Other than that [referring to a Mr. Eckelstein] you have never been represented by any other

attorneys or worked for any other attorneys other than that?

A. No. I never worked for him. He just represented me. He was my mother's lawyer.

In fact, Peggy had been employed by Sperling for 11 weeks in 1972. She was engaged in preparing a program booklet for a testimonial dinner sponsored by the Orthodox Jewish Council of which Sperling was then chairman. Peggy was paid by Sperling for the work. In the Blaustein Building (a highrise office building in Baltimore City) where Sperling had offices with the firm of Jacobs and Goldstein, Sperling had obtained a room on another floor in which Peggy worked. In these disciplinary proceedings the trial court found as a fact that "Sperling did not call upon Peggy to correct the record and he made no attempt to correct the record during the three year period following the deposition."

By July of 1976 an investigator for the defense in the personal injury suit had located a former husband of Peggy. This witness identified Peggy and Brown as friends and indicated that he had seen Brown at Peggy's home on a number of occasions in 1974. Defense counsel sat on this information until the case was called for trial on September 4, 1979, when the information was disclosed in a pretrial conference of court and counsel. After the dust had settled, Sperling struck his appearance from the personal injury case, the case was postponed (and later dismissed with prejudice), and the Anne Arundel County Circuit Court referred the matter to the State's Attorney. As counsel for Sperling in the disciplinary proceedings below characterized the next developments in his successful argument, Peggy and Brown then "turned on" Sperling.

Fact findings by the trial judge, to which no exceptions are taken by bar counsel, have exonerated Sperling from all violations charged, except those relating to Peggy's testimony concerning her employment history. On this aspect the trial judge found that DR 1-102 (A) (1), (4), (5) and DR 7-102 (B) (1) had been violated. They provide:

*DR 1-102 (A)* A lawyer shall not:

(1) Violate a Disciplinary Rule.

(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

(5) Engage in conduct that is prejudicial to the administration of justice.

*DR 7-102 (B)* A lawyer who receives information clearly establishing that:

(1) His client has, in the course of the representation, perpetrated a fraud upon a person or tribunal shall promptly call upon his client to rectify the same, and if his client refuses or is unable to do so, he shall reveal the fraud to the affected person or tribunal.

The key provision is DR 7-102 (B) (1), because it contains the imposition of a duty on counsel promptly to call upon his client to rectify fraud upon a person or tribunal.

It is appropriate to emphasize two aspects of the instant matter. Sperling was representing Peggy in a civil, as opposed to a criminal, proceeding.[1] Further, Sperling's knowledge that Peggy testified falsely with respect to employment history was not in any way the product of confidential communication between Peggy and Sperling. This case does not involve the friction between the duty to maintain client confidence and the second clause of DR 7-102 (B) (1), as it exists in Maryland, under which the attorney "shall reveal the fraud to the affected person or tribunal" if his client refuses or is unable to rectify the fraud.[2]

---

1. The record in these disciplinary proceedings does not contain the pleadings in the personal injury case. We intimate no opinion on the legal theory which might have led Sperling to conclude that Peggy was a party plaintiff in a claim or claims arising out of the collision.

2. This Court has not adopted, by amendment to Appendix F as incorporated in Maryland Rule 1230, the amendment to DR 7-102 (B) (1) adopted by the American Bar Association in February 1974 which adds to the end of the text of that rule as quoted above the words "except when the information is protected as a privileged communication."

Sperling's sole exception goes to a conclusion of law, and not to any findings of fact by the circuit judge. He contends that the facts as found do not demonstrate "fraud." In support of that contention Sperling relies on decisions which catalogue the elements of a tort action for damages sounding in deceit. "Fraud," as used in DR 7-102 (B) (1), is not that narrow in its intended meaning.

ABA Comm. on Ethics and Professional Responsibility, Informal Op. 1314 (1975) addresses in part the situation in which the attorney does not know in advance that the client intends to use perjured testimony or false evidence. In terms of DR 7-102 (B) that opinion refers to the lawyer having "the obligation to call upon his client to rectify the fraud . . . ." *Cf.* ABA Comm. on Ethics and Professional Responsibility, Formal Op. 341 (1975) (discussing the balancing of attorney's duty to preserve confidences and to reveal frauds); Informal Op. 1318 (1975) (attorney should withdraw from case when client proposes to commit perjury). Formal Op. 287 (1953) was written for the ABA Committee on Ethics by its longtime chairman, Henry S. Drinker, Esquire, the author of *Legal Ethics* (1953). That opinion involved an attorney's after the fact knowledge of his client's perjury in depositions given in a divorce case in which the attorney had represented the client. The opinion arose under the former Canons of Professional Responsibility and involved, *inter alia,* Canon 41 which provided in part that "[w]hen a lawyer discovers that some fraud or deception has been practiced, which has unjustly imposed upon the court or a party, he should endeavor to rectify it; at first by advising his client . . . ." The Committee opined that in the case before it "the lawyer should urge his client to make the disclosure, advising him that this is essential to secure for him any leniency in the event of the court's finding out the truth." DR 7-102 (B) (1) is derived in part from former Canon 41, *see* Formal Op. 341, *supra.* We believe it uses the term "fraud" in the same sense of including false swearing.

In *Matter of Malloy,* 248 N.W.2d 43 (N.D. 1976), the respondent attorney in a disciplinary proceeding was charged only with the violation of DR 7-102 (B) (1). There the client, at a deposition taken by the adverse party, denied that he had any written agreement with certain named individuals to operate a ranch property for them as their lessee, but the attorney who drew the papers binding the secret agreement was present when the deposition of his client was taken. The court analyzed the problem before it in terms of DR 7-102 (B) (1) and DR 4-101 (B) (1), relating to preservation of client confidence.

Wolfram, *Client Perjury,* 50 S. Cal. L. Rev. 809, 846 (1977), states:

> There is little disagreement among otherwise divided commentators that the attorney is under an obligation to attempt in good faith to discourage the client or other witness from committing perjury. A similar remonstration is required if the perjury is discovered after it has occurred. [Footnotes omitted.]

The author states that the regulatory source of the requirement to remonstrate is presumably inferred from the first clause of DR 7-102 (B) (1). *Id.* at 846 n. 140, 141.

For these reasons, Sperling's exception is overruled.

We turn to the issue of sanction. The trial court found that "there was no plan or thought process to purposefully tell a falsehood or to allow one to stand," although it viewed the matter as involving more than negligence. While the deposing adversary was entitled to truthful answers to the background questions put to Peggy, it was of very little, if any, relevance to the accident case that Peggy worked for

Sperling sometime in 1972. We conclude that a public reprimand is the appropriate sanction.

> *It is so ordered; respondent shall pay 50% of costs as taxed by the Clerk of this Court including costs of all transcripts pursuant to Maryland Rule BV15 c for which sum judgment is entered in favor of the Attorney Grievance Commission against Leonard Jerome Sperling.*