*Attorney Grievance Commission of Maryland v. Tristan Wade Gillespie,* AG No. 27, September Term, 2024. Opinion by Biran, J.

**ATTORNEY DISCIPLINE – MARYLAND RULE 19-737(f) – RECIPROCAL DISCIPLINE –** The United States District Court for the District of Maryland (the "district court") found that Tristan W. Gillespie violated Maryland Attorneys' Rules of Professional Conduct ("MARPC") 19-303.3 (candor toward tribunal), 19-303.4 (fairness to opposing party and attorney), and 19-304.1 (truthfulness in statements to others). On August 7, 2024, the district court suspended Gillespie for four months, *nunc pro tunc* from July 5, 2023. Thus, Gillespie's suspension was deemed to have been served at the time it was ordered. However, the district court noted in its Order suspending Gillespie that reinstatement to that court was not automatic, and that Gillespie would be required to comply with that court's Local Rule 705.4.

The Attorney Grievance Commission of Maryland, acting through Bar Counsel, filed a Petition for Disciplinary or Remedial Action against Gillespie based on his suspension by the district court. Bar Counsel and Gillespie jointly recommended that the Supreme Court of Maryland impose reciprocal discipline on Gillespie in the form of a four-month suspension, effective *nunc pro tunc*, from July 5, 2023.

In reciprocal discipline cases, the Supreme Court of Maryland usually imposes corresponding discipline to the sanction previously imposed in the other jurisdiction. The Supreme Court of Maryland held that, in this case, a four-month suspension would not constitute corresponding discipline in Maryland. An attorney who is suspended in the district court for four months must make a showing of fitness to resume the practice of law to be reinstated in the district court. In contrast, an attorney who is suspended for four months in Maryland is not required to make a showing of fitness to be reinstated. An attorney who is suspended indefinitely in Maryland must make a showing of fitness to be reinstated. The Supreme Court held that corresponding discipline in Maryland for Gillespie would be an indefinite suspension with the right to petition for reinstatement after four months.

The Supreme Court held that, given Gillespie's serious and pervasive Rules violations, which involved repeated instances of dishonesty to tribunals in hundreds of cases, corresponding discipline is not appropriate in this case. Rather, substantially greater discipline is warranted. Under Maryland Rule 19-737(f), the Court imposed an indefinite suspension with the right to apply for reinstatement: (1) no earlier than one year following the date of issuance of this opinion; and (2) after Gillespie has been readmitted to practice law in the district court.

Argued: September 4, 2025

IN THE SUPREME COURT

OF MARYLAND

AG No. 27

September Term, 2024

_____

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

TRISTAN WADE GILLESPIE

_____

Fader, C.J.
Watts
Booth
Biran
Gould
Eaves
Killough,

JJ.

_____

Opinion by Biran, J.

_____

Filed: November 21, 2025

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

Respondent Tristan Wade Gillespie was admitted to the Bar of this Court on December 28, 2015. He was admitted to the Bar of the United States District Court for the District of Maryland (the "district court") on May 1, 2020. On August 7, 2024, the district court suspended Gillespie from the practice of law before that court for a period of four months. The suspension stemmed from Gillespie's representation of two clients with disabilities in more than 600 "tester" cases around the nation.[1] In those cases, Gillespie filed complaints against hotels for allegedly failing to provide sufficient information through on-line reservation systems regarding hotel and room accommodations for patrons with disabilities, in violation of Title III of the Americans with Disabilities Act (the "ADA").

In connection with Gillespie's handling of the tester cases and his conduct in the district court's disciplinary proceedings, the district court found that Gillespie violated Maryland Attorneys' Rules of Professional Conduct ("MARPC") 3.3 (candor toward tribunal), 3.4 (fairness to opposing party and attorney), and 4.1 (truthfulness in statements to others).[2] The district court ordered Gillespie's four-month suspension to run *nunc pro tunc* from July 5, 2023. Thus, Gillespie's suspension was deemed to have been served when

---

[1] "Testers" are individuals who, without an intent to purchase or rent a home or an apartment (or, in the case of Gillespie's clients, a hotel room), pose as purchasers or renters for the purpose of collecting evidence of unlawful practices. *See, e.g.*, *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373 (1982).

[2] The district court "appl[ies] the Rules of Professional Conduct as they have been adopted by the Supreme Court of Maryland." D. Md. Loc. R. 704. In this opinion, for ease of reference, we use the numbering format of the American Bar Association Model Rules – *e.g.*, MARPC 3.3, in lieu of MARPC 19-303.3. *See* Md. Rule 19-300.1(22).

the district court imposed it on August 7, 2024. However, the district court noted that Gillespie's reinstatement to the Bar of the district court was "not automatic," and that Gillespie needed to comply with that court's Local Rule 705.4, which sets forth various requirements and procedures governing reinstatement of suspended or disbarred attorneys to practice before the district court.

On December 6, 2024, the Attorney Grievance Commission, acting through Bar Counsel, filed a Petition for Disciplinary or Remedial Action (the "PDRA") against Gillespie based on his suspension by the district court. In the PDRA, Bar Counsel requested that this Court impose "corresponding discipline." After Gillespie's four-month suspension was affirmed by the United States Court of Appeals for the Fourth Circuit, Bar Counsel and Gillespie filed a Joint Petition for Reciprocal Action in which they agreed that this Court should impose a four-month suspension, effective *nunc pro tunc*, from July 5, 2023.

As discussed below, a four-month suspension would not constitute corresponding discipline, given the different rules regarding reinstatement that apply in the district court and this Court. Corresponding discipline in this case would be an indefinite suspension with the right to apply for reinstatement after four months. However, corresponding discipline is an insufficient sanction for Gillespie's serious and pervasive violations of the MARPC. We shall impose an indefinite suspension with the right to apply for reinstatement: (1) no earlier than one year following the date of issuance of this opinion; and (2) after Gillespie has been reinstated to practice law in the district court.

# I

# Background

## A. The District Court's Findings and Gillespie's Appeals to the Fourth Circuit

The district court initially suspended Gillespie on July 5, 2023, following an extensive investigation and an evidentiary hearing before a three-judge panel (the "Panel") of the district court's Disciplinary and Admissions Committee. At that time, the Panel recommended a six-month suspension.

The district court adopted the Panel's Report and Recommendation dated June 30, 2023, and thereby found that Gillespie:

(1) failed to adequately communicate with clients and keep them reasonably informed, in violation of MARPC 1.2 and 1.4;

(2) failed to act with candor toward the district court and other tribunals, in violation of MARPC 3.3; and

(3) failed to act with fairness and candor toward opposing counsel during settlement negotiations, in violation of MARPC 3.4 and 4.1.

The district court also adopted the Panel's recommendation and suspended Gillespie for six months.

Gillespie appealed his suspension to the United States Court of Appeals for the Fourth Circuit. The Fourth Circuit concluded that Gillespie received insufficient notice of the alleged violations of MARPC 1.2 and 1.4, vacated the district court's suspension order, and remanded the case for further proceedings. *In re Gillespie*, No. 23-1819, 2023 WL 7548181, at *1 (4th Cir. Nov. 14, 2023).

On remand, the Panel held a second evidentiary hearing limited to whether Gillespie violated MARPC 1.2 and 1.4. The Panel subsequently issued a Supplemental Report & Recommendation on August 7, 2024 (the "Supplemental Report"), finding that Gillespie did not violate MARPC 1.2 and 1.4. However, the Panel reaffirmed its earlier findings that Gillespie failed to act with candor toward the district court and other tribunals, in violation of MARPC 3.3,[3] and failed to act with fairness and candor toward opposing counsel during settlement negotiations, in violation of MARPC 3.4[4] and 4.1.[5] The Panel incorporated its

---

[3] MARPC 3.3(a) provides in pertinent part: "An attorney shall not knowingly … make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the attorney[.]"

[4] MARPC 3.4 provides in pertinent part:

An attorney shall not:

(a) unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value. An attorney shall not counsel or assist another person to do any such act;

(b) falsify evidence, counsel or assist a witness to testify falsely, or offer an inducement to a witness that is prohibited by law; [or]

(c) knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists[.]

[5] MARPC 4.1(a) provides:

In the course of representing a client an attorney shall not knowingly:

(1) make a false statement of material fact or law to a third person; or

(2) fail to disclose a material fact when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client.

4

prior factual findings and legal conclusions in all respects as to Gillespie's violations of MARPC 3.3, 3.4, and 4.1.

The Panel found that Gillespie's violations of MARPC 3.3 were "repeated and blatant." *In re Gillespie*, No. 21-mc-14, 2023 WL 4976173, at *13 (D. Md. June 30, 2023). Gillespie misrepresented the amount of time he spent on each matter in "scores of fee petitions filed across the country[.]" *Id.* He also misrepresented his employment when petitioning for attorneys' fees. That is, Gillespie often requested a higher billable rate in his fee petitions, claiming that litigating Title III ADA cases caused negative publicity and limited his ability to obtain other work. However, at the time Gillespie filed these fee petitions, he was employed full-time as an Assistant District Attorney in Georgia.[6] Thus, the Panel found, "the ADA cases did not preclude [Gillespie] from taking other work – his full-time job as a prosecutor did." *Id.* at *14.

The Panel also found that Gillespie exhibited a lack of candor by allowing a witness "to testify in a way that clearly misled the court"; further, Gillespie "should have corrected the record, but he did not." *Id.* And, "when confronted about his failure, Gillespie blamed the erroneous testimony on [the witness's] cognitive limitations." *Id.*

In addition, the Panel found that Gillespie's lack of candor during the disciplinary investigation further supported the finding of a violation of MARPC 3.3:

> As to his inflated fee petitions submitted to courts around the country, Gillespie's shifting explanations defy credulity. Initially, Gillespie insisted

---

[6] The attorney whom the Panel appointed to investigate the allegations against Gillespie concluded that both the District Attorney's Office and the law firm for which Gillespie worked in filing the tester cases were aware of and approved Gillespie's dual employment.

to the Investigator that the fee petitions were accurate. He doubled down on that theory in his opening statement to the Panel, where he expressed regret for not explaining why it took well over two hours to draft a largely boilerplate complaint. Yet when pressed during questioning, Gillespie readily conceded that the numbers were not accurate (Question: "To draft the complaints, do you stand by that number two and a half hours?" Answer: "No.").

Indeed, even at the hearing itself, the truth for Gillespie was elusive. Concerned about the propriety of payments made to [the law firm's investigator], the Panel asked Gillespie a basic question about whether he was aware of a personal relationship between [his client] and the firm investigator. Gillespie initially claimed to be wholly unaware of any such relationship. Yet later in his testimony, Gillespie admitted to knowing that the investigator was the father of [his client's] grandchild. Even more disturbing is the ease with which Gillespie provided two flatly inconsistent answers under oath, at a hearing about whether his lack of candor to the tribunal merited formal discipline.

*Id.* (References to the record omitted.)

With respect to MARPC 3.4 and 4.1, the Panel found that Gillespie "persistently violated" those Rules in several ways:

Gillespie misled defense counsel to believe that plaintiffs had actually incurred attorneys' fees and costs that they had not. The amount negotiated as "good and valuable consideration" to the plaintiff for dropping her suit was *never* to be borne by the plaintiff, yet the settlement agreements plainly state the opposite.

Gillespie's attorney-fee demands also bore no correlation to time actually spent on the case. As to past work, Gillespie's timesheets are unreliable and routinely inflated. While he may not have provided these timesheets to opposing counsel, they nonetheless illustrate Gillespie's tendency to exaggerate his actual work to extract a favorable fee....

Further, of the three settlement options that Gillespie provided to opposing counsel, two accounted for an outsized attorney-fee reimbursement that contemplated his future work. Gillespie admitted that in the hundreds of cases for which he has been counsel of record, he has *never* performed such future work. The fictional future time conveniently aids the misimpression that Gillespie has worked harder on these cases than he has or will.

6

Gillespie's lack of candor during settlement negotiations violates [MARPC 3.4 and 4.1].

*Id.* at *15. (Emphasis in original; references to the record omitted.)

Considering aggravating factors, the Panel pointed to Gillespie's "pattern of dishonesty," which it described as "patent." According to the Panel, Gillespie's

cavalier approach to the truth before scores of tribunals warrants a serious response to uphold the integrity of our judicial system. In default judgment motions filed across the country, Gillespie proffered hundreds of hours he did not work, or had no intention of working, to obtain an order for fees that he did not earn. With the same disregard for the truth, Gillespie has extracted countless settlement agreements to be paid attorney fees for similarly fictionalized representations of work performed or to be performed when, according to Gillespie, he never collected or intended to collect from the plaintiffs in the event the matter did not settle.

*Id.* at *16. In addition, the Panel found as an aggravating factor that "Gillespie persisted in his misrepresentations to this Panel, failing to fully acknowledge the seriousness of his transgressions." *Id.* The Panel acknowledged that Gillespie responded to document requests and sat for an interview. *Id.* "But he also persistently denied any wrongdoing, insisted on the accuracy of his fee petitions, doubled down on the nobility of his work, and feigned ignorance about breaching some of the most fundamental duties that a lawyer owes to his clients." *Id.*

As to mitigating factors, the Panel stated that the record was "mixed." *Id.* The Panel found that Gillespie was "an experienced litigator who should and did know better." *Id.* However, the Panel observed that Gillespie had practiced law for nearly 20 years without any prior discipline. *Id.* The Panel noted Gillespie's claim that he had "'closed up shop' as to the ADA tester cases, suggesting the risk of future ethical breaches is low." *Id.* But the

7

Panel also observed that Gillespie "ended his ADA tester case pursuits because the Court raised concerns about his misconduct, not because he was concerned for his ADA clients." *Id.* According to the Panel, "[p]erhaps the single greatest mitigating factor is that Gillespie appears to have acted largely at the direction of his boss, Thomas B. Bacon, and that he has since cut ties with Bacon." *Id.* at *17.

The Panel recommended that the district court reinstate Gillespie's suspension from the practice of law for a period of four months. The Panel stated that "Gillespie's ability to practice in our Court has already been suspended for slightly more than four months pursuant to the initial, now vacated, order of suspension (July 5, 2023, through November 14, 2023)." Supp. Rep. at 3. Thus, the Panel recommended that the recommended four-month suspension "be deemed as served[.]" *Id.* The Panel also recommended that Gillespie be required to "petition for reinstatement pursuant to Local Rule 705.4." *Id.*

The district court adopted the Panel's Supplemental Report and incorporated it as the district court's supporting Memorandum Opinion. Thus, the district court found that Gillespie violated MARPC 3.3, 3.4, and 4.1. The district court also adopted the Panel's recommended sanction, suspending Gillespie from the practice of law for four months, effective *nunc pro tunc*, from July 5, 2023. The district court stated that the suspension therefore was "deemed as served[.]" Order at 1. The district court further stated that reinstatement was not automatic and that Gillespie was required to comply with Local Rule 705.4.[7] *Id.*

---

[7] Local Rule 705.4(a) provides in pertinent part: "An attorney suspended for more than ninety (90) days, disbarred, or transferred to disability inactive status may not resume

Gillespie again appealed his suspension. The Fourth Circuit affirmed Gillespie's four-month suspension in a one-paragraph unpublished *per curiam* opinion. *In re Gillespie*, No. 24-1810, 2025 WL 1443939 (4th Cir. May 20, 2025).

## B. Discipline Imposed by Other Courts Based on the District Court's Findings

Gillespie is admitted to practice law in multiple state and federal courts. Several of these other jurisdictions have disciplined Gillespie based on the district court's findings that Gillespie violated MARPC 3.3, 3.4, and 4.1. On February 11, 2025, Gillespie's license to practice law in the State of New York was suspended for one year based on the district court's findings. Since then, 13 federal district and appellate courts have effectively suspended Gillespie from the practice of law for at least one year for the same misconduct.[8] One federal district court (the United States District Court for the Middle District of Georgia) suspended Gillespie for four months. One federal appellate court (the United States Court of Appeals for the District of Columbia Circuit) suspended Gillespie for four months, and directed that Gillespie may petition for reinstatement to that court after he is reinstated by the district court.

---

practice until reinstated by order of this Court, pursuant to a petition for reinstatement filed by the attorney." D. Md. Loc. R. 705.4(a). We discuss Local Rule 705.4 in greater detail below.

[8] Those courts are the United States Courts of Appeals for the Second Circuit, Seventh Circuit, Eighth Circuit, and Eleventh Circuit; and the United States District Courts for the Southern District of Georgia, Northern District of Georgia, Western District of Michigan, Eastern District of New York, Northern District of New York, Northern District of Ohio, Western District of Pennsylvania, District of Vermont, and Eastern District of Wisconsin.

9

### C. Proceedings in this Court

While Gillespie's second appeal to the Fourth Circuit was pending, Bar Counsel filed the PDRA against Gillespie, and requested that this Court impose "corresponding discipline." In response to the PDRA, this Court issued an order directing Gillespie to show cause within 15 days why he should not be suspended immediately from the practice of law in Maryland under Maryland Rule 19-737(d). In the same order, in keeping with Maryland Rule 19-737(c), we directed both parties, if they took the position that corresponding discipline is not appropriate in this matter, to show cause in writing within 30 days why, based on any of the grounds in Maryland Rule 19-737(e), this Court should not impose corresponding discipline and should, instead, impose a different disposition.

Gillespie responded to the show cause order by requesting that we hold the matter in abeyance pending the Fourth Circuit's disposition of his appeal. Bar Counsel took the position that Gillespie should be immediately suspended from the practice of law in Maryland until such time as he is reinstated as an active member of the Bar of the district court. Based on the parties' responses to the show cause order, on February 7, 2025, we issued an order: (1) holding this matter in abeyance pending a decision from the Fourth Circuit; (2) denying Bar Counsel's request for an immediate suspension; and (3) directing Bar Counsel to provide a status of the disposition of Gillespie's appeal by the Fourth Circuit upon the issuance of that court's opinion.

The Fourth Circuit affirmed Gillespie's four-month suspension on May 20, 2025. On June 13, 2025, Bar Counsel and Gillespie filed a Joint Petition for Reciprocal Action, in which they agreed that exceptional circumstances, as defined in Maryland Rule 19-

10

737(e),[9] do not exist and that this Court should impose a four-month suspension from the practice of law, effective *nunc pro tunc* to July 5, 2023.

On June 27, 2025, this Court issued another show cause order. In that order, we stated that, upon a review of the parties' Joint Petition for Reciprocal Action, "the Court has determined that exceptional circumstances under Rule 19-737(e)(4) may exist that may warrant substantially greater discipline by the Court." Accordingly, we directed the parties to provide additional information to support the joint petition, including an explanation as to why a four-month suspension is appropriate for Gillespie's misconduct.

The parties filed a joint response to the second show cause order in which they stated that "neither Bar Counsel nor the Respondent can proffer to this Honorable Court that there are any facts or case law that demonstrate by clear and convincing evidence that would

---

[9] Maryland Rule 19-737(e) provides in relevant part:

> **Exceptional Circumstances.** Reciprocal discipline shall not be ordered if Bar Counsel or the attorney demonstrates by clear and convincing evidence that:
>
> (1) the procedure [in the disciplining jurisdiction] was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process;
>
> (2) there was such infirmity of proof establishing the misconduct as to give rise to a clear conviction that the Court, consistent with its duty, cannot accept as final the determination of misconduct;
>
> (3) the imposition of corresponding discipline would result in grave injustice; [or]
>
> (4) the conduct established does not constitute misconduct in this State or it warrants substantially different discipline in this State[.]

warrant substantially different discipline in this State." We subsequently set the matter for oral argument.

## II

## Discussion

Maryland Rule 19-737 concerns, among other things, reciprocal discipline. Pertinent here, the Rule provides that, "[u]pon receiving and verifying information from any source that in another jurisdiction an attorney has been disciplined …, Bar Counsel may file a Petition for Disciplinary or Remedial Action in the Supreme Court pursuant to Rule 19-721(a)(2)." Md. Rule 19-737(b). Barring certain exceptional circumstances discussed below, "a final adjudication in a disciplinary or remedial proceeding by another court, agency, or tribunal that an attorney has been guilty of professional misconduct … is conclusive evidence of that misconduct … in any proceeding under this Chapter." Md. Rule 19-737(g).

When a petition and certified copy of a disciplinary order have been filed, "the Supreme Court shall order that Bar Counsel and the attorney, within the time specified in the order, show cause in writing based upon any of the grounds set forth in section (e) of this Rule why corresponding discipline … should or should not be imposed or entered." Md. Rule 19-737(c). Upon consideration of the petition and any answer to the order to show cause, this Court "may: (1) immediately impose corresponding discipline …; (2) enter an order designating a judge pursuant to Rule 19-722 to hold a hearing in

12

accordance with Rule 19-727; or (3) enter any other appropriate order." Md. Rule 19-737(f).[10]

"Corresponding discipline" is not necessarily identical discipline. *Attorney Grievance Comm'n v. Whitehead*, 390 Md. 663, 681 (2006). In the context of a reciprocal disciplinary action – *i.e.*, where the Attorney Grievance Commission files a PDRA based on a finding of a Rules violation in another jurisdiction – "corresponding discipline" can include a sanction that is "equivalent in function" or that has "an obvious similarity, although not agreeing in every detail" to the sanction previously imposed in the other jurisdiction. *Id.* at 681 & n.13 (citing dictionary definitions of "corresponding").[11]

---

[10] In addition, this Court may enter an order immediately suspending the attorney from the practice of law, pending further order of the Court. *See* Md. Rule 19-737(d)(2). As discussed above, Bar Counsel requested that we immediately suspend Gillespie from the practice of law under Rule 19-737(d)(2) until such time that Gillespie is reinstated to practice law in the district court. Because Gillespie's appeal of the district court's four-month suspension was pending at the time Bar Counsel filed the PDRA, we declined to impose an immediate temporary suspension.

[11] We use the phrase "reciprocal discipline" to mean the imposition of a sanction based on the finding in a disciplinary action in another jurisdiction that an attorney has violated a rule of professional conduct. "Corresponding discipline" is a sanction that is either identical or functionally equivalent (or at least obviously similar) to the sanction that the first-disciplining jurisdiction imposed. While all "corresponding discipline" constitutes "reciprocal discipline" in Maryland, not all "reciprocal discipline" is "corresponding discipline." For example, consider a hypothetical attorney who is admitted in Georgia and Maryland. The attorney is disbarred in Georgia for, among other things, making false statements in filings in Georgia courts, in violation of Rule 3.3(a)(1) of the Georgia Rules of Professional Conduct. *See, e.g.*, *Matter of Stephens*, 898 S.E.2d 490 (Ga. 2024). Subsequently, the Attorney Grievance Commission files a reciprocal disciplinary case in this Court based on the attorney's violations of Georgia's rules. Before this Court, the attorney establishes by clear and convincing evidence that the attorney's conduct does not warrant disbarment in Maryland, but rather an indefinite suspension. That is, the attorney establishes that substantially different discipline is warranted – one of the exceptional circumstances set forth in Maryland Rule 19-737(e) – thus precluding the imposition of

13

In a reciprocal discipline case filed under Rule 19-737, we usually impose corresponding discipline, provided that "the purpose of the originating jurisdiction's sanction is congruent with ours[.]" *Attorney Grievance Comm'n v. Burghardt*, 442 Md. 151, 159 (2015). However, we are not required to impose corresponding discipline in any reciprocal case. *See Whitehead*, 390 Md. at 671 & n.10 (collecting cases). Indeed, we have explained that we "are required to assess for ourselves the propriety of the sanction imposed by the other jurisdiction and that recommended by the Commission." *Attorney Grievance Comm'n v. Weiss*, 389 Md. 531, 546 (2005); *see also Attorney Grievance Comm'n v. Gordon*, 413 Md. 46, 57 (2010) ("[I]n an effort to avoid inconsistent sanctions, we need not follow the original jurisdiction's sanction when our cases demonstrate that we would apply a different sanction, had the conduct occurred or the case originated here."); *Burghardt*, 442 Md. at 158 ("[T]he sanction to be imposed depends not only on the decision of the sister jurisdiction, but also on the specific facts of each case, balanced against Maryland precedent.") (internal quotation marks and citation omitted).

In addition, as discussed above, Rule 19-737(e) contemplates the possibility of "exceptional circumstances" that, if shown to exist by Bar Counsel or the attorney by clear and convincing evidence, preclude this Court from imposing corresponding discipline.

---

corresponding discipline. The indefinite suspension imposed by this Court in that hypothetical situation is reciprocal discipline, but not corresponding discipline.

14

Those exceptional circumstances are:

> (1) the procedure [in the first-disciplining jurisdiction] was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process;
>
> (2) there was such infirmity of proof establishing the misconduct as to give rise to a clear conviction that the Court, consistent with its duty, cannot accept as final the determination of misconduct;
>
> (3) the imposition of corresponding discipline would result in grave injustice; [or]
>
> (4) the conduct established does not constitute misconduct in this State or *it warrants substantially different discipline in this State*[.]

Md. Rule 19-737(e) (emphasis added). With respect to the second part of the fourth exceptional circumstance, we have observed that "[t]he most reasonable way to determine whether the attorney's conduct in another jurisdiction warrants substantially different discipline in this state is to review our own cases and determine which sanction would have been adequate had the case originated in this State." *Whitehead*, 390 Md. at 671 (emphasis deleted).

In short, regardless of whether Bar Counsel or the respondent attorney attempts to demonstrate that the attorney's conduct warrants substantially different discipline in Maryland, we will impose a sanction that is different than that imposed in the other jurisdiction if we conclude that this exceptional circumstance is present. *See Burghardt*, 442 Md. at 157-58. When we impose substantially different discipline on our own motion, we do so under Rule 19-737(f), which authorizes this Court, among other things, to "enter any … appropriate order" in a reciprocal discipline case.

15

**A. A Four-Month Suspension Would Not Be Corresponding Discipline.**

The parties recommended in their jointly filed papers that we suspend Gillespie for four months, *nunc pro tunc*, from July 5, 2023. Their position was that a four-month suspension in Maryland would constitute corresponding discipline to the suspension imposed by the district court. That is incorrect. Corresponding discipline in Maryland in this case would be an indefinite suspension with the right to apply for reinstatement after four months.

Our decision in *Attorney Grievance Commission v. Haas*, 412 Md. 536 (2010), is instructive. There, the Supreme Court of New York, Appellate Division, had suspended Haas for a definite period, namely, three years. *See id.* at 549. The New York Court's suspension order indicated that Haas would not be automatically reinstated after three years. Rather, as a prerequisite to reinstatement, Haas would be required to show, among other things, that he possessed the character and general fitness to resume the practice of law. *Id.*

Having decided to impose corresponding discipline to the New York sanction, *see id.* at 548-49, this Court explained that corresponding discipline was not a definite suspension, but rather an indefinite suspension. *Id.* at 549. That was the case because reinstatement following an indefinite suspension required a showing of fitness that was comparable to the showing of fitness that Haas would need to make to be reinstated in New York. *See id.* at 552-53; *see also Attorney Grievance Comm'n v. Thomas-Bellamy*, 450 Md. 516, 521 n.2 (2016) (noting that a six-month suspension in the District of Columbia, with reinstatement conditioned on a showing of fitness, "is functionally equivalent" to an

indefinite suspension in Maryland with the right to petition for reinstatement after six months, "as the Maryland Rules require a showing of fitness when an attorney who receives such a sanction applies for reinstatement"); *id.* at 522, 525 (concluding that an indefinite suspension in Maryland with the right to petition for reinstatement in one year is "the appropriate corresponding discipline" to a one-year suspension with the right to reinstatement conditioned on a showing of fitness in the District of Columbia); *Attorney Grievance Comm'n v. Beatty*, 409 Md. 11, 15-17 (2009) (three-month suspension in New Jersey was the "functional equivalent" of an indefinite suspension in Maryland, where attorney's petition for reinstatement in New Jersey would need to set forth "all material facts on which the [attorney] relies to establish fitness to resume the practice of law" and attorney would not be reinstated until the Supreme Court of New Jersey was "persuaded that he is once again fit to practice law").

Under the district court's Local Rules, an attorney who has received a suspension for a fixed period may apply for reinstatement at any time after completion of the suspension.[12] A court order reinstating a suspended attorney is required where, as in

---

[12] District court Local Rule 705.4 contains two time constraints for filing a petition for reinstatement. First, an attorney who has been disbarred after hearing or by consent may not apply for reinstatement until the expiration of at least five years from the effective date of the disbarment. Second, in the case of reciprocal discipline or other action, an attorney who has been indefinitely suspended or transferred to disability inactive status may only apply for reinstatement upon proof that the attorney has been reinstated by the court in which the attorney was disciplined or transferred to disability inactive status. D. Md. Loc. R. 705.4(b). Neither of these timing provisions applies to Gillespie. Thus, Gillespie was permitted to apply for reinstatement to the district court immediately upon completion of his four-month suspension. At oral argument in this Court, Gillespie's counsel stated that Gillespie has filed a petition for reinstatement in the district court. *See also* note 14 below.

17

Gillespie's case, the suspension exceeds 90 days. D. Md. Loc. R. 705.4(a). Upon receipt of a petition for reinstatement, the Clerk of the district court must refer the petition to the court's Disciplinary and Admissions Committee for review and determination whether a hearing is necessary. D. Md. Loc. R. 705.4(c)(i). If the Disciplinary and Admissions Committee finds good cause that reinstatement is appropriate without a hearing, then the district court, if in agreement, may grant the petition for reinstatement. D. Md. Loc. R. 705.4(c)(i). If the Disciplinary and Admissions Committee determines, based on the papers filed, that reinstatement is not appropriate and a hearing is not necessary, then the district court, if in agreement, may deny the petition for reinstatement without a hearing. D. Md. Loc. R. 705.4(c)(i). "Otherwise, the Chief Judge shall assign the matter for prompt hearing." D. Md. Loc. R. 705.4(c)(ii).

At such a hearing, the attorney has the burden of demonstrating by clear and convincing evidence that the attorney "has the moral qualifications, competency, and learning in the law required for admission to practice law before [the district court] and the [attorney's] resumption of the practice of law will not be detrimental to the integrity and standing of the Bar or to the administration of justice, or subversive of the public interest." D. Md. Loc. R. 705.4(c)(ii).

If we were to impose the four-month definite suspension recommended by the parties, Gillespie's reinstatement would be governed by Maryland Rule 19-751. Under Rule 19-751, where an attorney has been suspended for a fixed period not exceeding six

18

months, the attorney must file a verified petition for reinstatement in which the attorney

certifies only that:

    a. the attorney has complied with Rule 19-741[13] and all requirements and conditions specified in the suspension order;

    b. the attorney has paid all assessments and applicable late fees owed to the Client Protection Fund and the Disciplinary Fund as of the effective date of the attorney's suspension; and

    c. to the best of the attorney's knowledge, information, and belief, no complaints or disciplinary proceedings are currently pending against the attorney.

Md. Rule 19-751(c)(3).

A comparison of the relevant reinstatement provisions demonstrates that an attorney who receives a four-month suspension from this Court has a less onerous path to reinstatement than an attorney who receives a four-month suspension in the district court. In particular, Maryland Rule 19-751(c)(3) does not require an attorney seeking reinstatement to make a showing of fitness to resume the practice of law. In contrast, the district court's Local Rule 705.4(c)(ii) requires an attorney who has been suspended for more than 90 days to make such a showing.[14]

---

[13] Maryland Rule 19-741 imposes several affirmative duties on attorneys who have been suspended or disbarred. For example, within 15 days of being disbarred or suspended, an attorney must mail a letter giving notice of the order of suspension or disbarment and the effective date of the disbarment or suspension to: (i) all of the attorney's current clients; (ii) counsel for each party and any self-represented party in all pending actions, proceedings, negotiations, or transactions; and (iii) each attorney with whom the attorney is associated in the practice of law. Md. Rule 19-741(c)(1)(C).

[14] As discussed above, if the Disciplinary and Admissions Committee finds good cause that reinstatement is appropriate without a hearing, then the district court, if in agreement, may grant an attorney's petition for reinstatement. D. Md. Loc. R. 705.4(c)(i).

19

The requirements for reinstatement in Maryland after an indefinite suspension, which are set forth in Maryland Rule 19-752,[15] are more aligned with the district court's Local Rule 705.4(c)(ii) than are the requirements for reinstatement in Maryland after a suspension for a fixed period not exceeding six months. Under Rule 19-752, an attorney who has been suspended indefinitely must file a petition for reinstatement that includes all the information required under Rule 19-751(c)(3), as well as (among other things) "facts establishing the attorney's subsequent conduct and reformation, present character, present qualifications and competence to practice law, and ability to satisfy the criteria set forth in section (h) of this Rule[.]" Md. Rule 19-752(c)(3)(F).[16] Thus, Rule 19-752 requires the

Read together with Local Rule 705.4(c)(ii), it seems plain that the district court will find good cause to grant reinstatement without a hearing only if the court is satisfied, based on its review of the petition, that the attorney "has the moral qualifications, competency, and learning in the law required for admission to practice law before [the district court] and the [attorney's] resumption of the practice of law will not be detrimental to the integrity and standing of the Bar or to the administration of justice, or subversive of the public interest." D. Md. Loc. R. 705.4(c)(ii).

Our reading of Local Rule 705.4(c)(i) is consistent with information that Gillespie's counsel provided during oral argument concerning Gillespie's pending petition for reinstatement in the district court. According to Gillespie's counsel, after reviewing Gillespie's petition, the district court found it "to be somewhat lacking, and they have sent back a letter … saying that he has the burden to demonstrate by clear and convincing evidence that he has the moral qualifications, competency, and learning to practice before the court." Gillespie's counsel further apprised this Court that the district court gave Gillespie 30 days in which to supplement his petition for reinstatement.

[15] Rule 19-752 also applies to attorneys who have received fixed suspensions in excess of six months and who have been disbarred. *See* Md. Rule 19-752(a).

[16] Section (h) of Rule 19-752 sets forth criteria that this Court must consider in determining whether to grant a petition for reinstatement filed by an attorney who was suspended for more than six months, suspended indefinitely, or disbarred, including whether the attorney currently has the requisite honesty and integrity to practice law and

20

petitioner to make a showing of fitness to resume the practice of law that is similar to the showing that Gillespie must make under Local Rule 705.4(c)(ii).

Based on our review of the applicable reinstatement provisions in the district court compared to those in Maryland, we conclude that corresponding discipline in Maryland for Gillespie is not a four-month suspension. Rather, corresponding discipline in this case would be an indefinite suspension with the right to apply for reinstatement after four months. *See Thomas-Bellamy*, 450 Md. at 521 n.2, 525.[17]

---

whether the attorney has kept informed about recent developments in the law and is competent to practice law. Md. Rule 19-752(h)(2)(F) & (h)(2)(G).

[17] At oral argument, in response to the suggestion by members of the Court that a definite suspension of four months would not constitute corresponding discipline, counsel for Gillespie proffered that the Court could consider as corresponding discipline "an indefinite suspension … with the right to reapply after four-months suspension, *nunc pro tunc*, so he could reapply right away." A four-month indefinite suspension *nunc pro tunc* to July 7, 2023 would not be corresponding discipline. In the district court, Gillespie had served more than four months of his initial six-month suspension when the Fourth Circuit vacated and remanded his case. Thus, when the district court on remand imposed a four-month suspension, it stated that the suspension was deemed to have been served.

After filing the PDRA in this case, Bar Counsel requested that we immediately suspend Gillespie under Rule 19-737(d)(2). Gillespie objected to an immediate temporary suspension. Because Gillespie's second appeal to the Fourth Circuit was pending, we denied Bar Counsel's request for an immediate temporary suspension and held this matter in abeyance until the Fourth Circuit issued its opinion. Gillespie has remained an active member of the Maryland Bar to this day. Thus, in contrast to Gillespie's status in the district court when the district court imposed the four-month suspension on remand, Gillespie will not have served any period of suspension in Maryland when this Court imposes its sanction. If Gillespie had consented to an immediate temporary suspension, and if we had granted Bar Counsel's request for such a suspension, corresponding discipline arguably would be an indefinite suspension for four months, *nunc pro tunc* to the date of imposition of the temporary suspension.

**B. Substantially Greater Discipline Is Warranted in This Case.**

The question thus becomes whether this Court should impose corresponding discipline – *i.e.*, an indefinite suspension with the right to apply for reinstatement after four months. In Maryland, "[t]he primary purpose of attorney discipline is the protection of the public, not the punishment of the attorney." *Attorney Grievance Comm'n v. Sperling*, 459 Md. 194, 285 (2018) (internal quotation marks and citation omitted). To ensure sanctions are "commensurate with the nature and gravity of the violations and the intent with which they were committed," *Attorney Grievance Comm'n v. Parris*, 482 Md. 574, 598-99 (2023) (citations omitted), this Court considers: (1) the rule(s) of professional conduct that the attorney violated; (2) the attorney's mental state; (3) the injury that the attorney's misconduct caused or could have caused; and (4) any aggravating and/or mitigating factors, as suggested by the American Bar Association. *Attorney Grievance Comm'n v. Allenbaugh*, 450 Md. 250, 277 (2016).

Aggravating factors include: (1) prior attorney discipline; (2) a dishonest or selfish motive; (3) a pattern of misconduct; (4) multiple violations of the Rules of Professional Conduct; (5) bad faith obstruction of the attorney discipline proceeding by intentionally failing to comply with the Maryland Rules or orders of this Court or the hearing judge; (6) submission of false evidence, false statements, or other deceptive practices during the attorney discipline proceeding; (7) a refusal to acknowledge the misconduct's wrongful nature; (8) the victim's vulnerability; (9) substantial experience in the practice of law; (10) indifference to making restitution or rectifying the misconduct's consequences; (11) illegal conduct, including that involving the use of controlled substances; and

22

(12) likelihood of repetition of the misconduct. *Attorney Grievance Comm'n v. Yeatman*, 489 Md. 211, 235-36 (2024).

Mitigating factors include: (1) the absence of prior attorney discipline; (2) the absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith efforts to make restitution or to rectify the misconduct's consequences; (5) full and free disclosure to Bar Counsel or a cooperative attitude toward the attorney discipline proceeding; (6) inexperience in the practice of law; (7) character or reputation; (8) a physical disability; (9) a mental disability or chemical dependency; (10) delay in the attorney discipline proceeding; (11) the imposition of other penalties or sanctions; (12) remorse; (13) remoteness of prior violations of the Rules of Professional Conduct; and (14) unlikelihood of repetition of the misconduct. *Id.* at 238.

1.  Application of Aggravating and Mitigating Factors Found by the Panel

As discussed above, the Panel found the existence of two aggravating factors in connection with Gillespie's violations of MARPC 3.3, 3.4, and 4.1.[18] First, the Panel found that Gillespie exhibited a pattern of misconduct, observing that "[i]n default judgment motions filed across the country, Gillespie proffered hundreds of hours he did not work, or had no intention of working, to obtain an order for fees that he did not earn." *In re Gillespie*, 2023 WL 4976173, at *16. In addition, Gillespie "extracted countless settlement agreements to be paid attorney fees for similarly fictionalized representations of work

_____

[18] In its initial opinion, the Panel also found the existence of two other aggravating factors related to Gillespie's violations of Rules 1.2 and 1.4. Because the Panel on remand found that Gillespie did not violate Rules 1.2 and 1.4, we will not discuss those other aggravating factors here.

performed or to be performed when, according to Gillespie, he never collected or intended to collect from the plaintiffs in the event the matter did not settle." *Id.* Second, the Panel found that Gillespie failed to acknowledge the seriousness of his misconduct. According to the panel, Gillespie "persistently denied any wrongdoing, insisted on the accuracy of his fee petitions, doubled down on the nobility of his work, and feigned ignorance about breaching some of the most fundamental duties that a lawyer owes to his clients." *Id.*

The only circumstance the Panel found to be unqualifiedly mitigating was that "Gillespie appears to have acted largely at the direction of his boss, Thomas B. Bacon, and that he has since cut ties with Bacon." *Id.* at *17.[19] Committing violations of the Rules of Professional Conduct at the direction of one's superior, and then cutting ties with him or her after the misconduct is discovered, is not a circumstance that we find to be substantially mitigating on this record. In our view, the aggravation greatly outweighs the mitigation in this case. We agree with the Panel's view that Gillespie's "cavalier approach to the truth before scores of tribunals warrants a serious response to uphold the integrity of our judicial system." *Id.* at *16.

2. <u>The Appropriate Sanction in This Case</u>

At oral argument, Bar Counsel stated that there are no exceptional circumstances that would warrant a sanction substantially lower than corresponding discipline. We agree. Thus, we reject the parties' recommendation that we impose a definite four-month suspension, *nunc pro tunc* to July 7, 2023. However, the question remains whether we

---

[19] According to the Panel, the evidence concerning other mitigating factors was "mixed."

should impose a sanction that is substantially greater than an indefinite suspension with the right to petition for reinstatement after four months. We determine that Gillespie's pattern of misconduct – which involved the same acts of dishonesty in hundreds of cases – warrants substantially greater discipline in Maryland. Thus, we conclude on our own motion that the exceptional circumstance set forth in Rule 19-737(e)(4) exists in this case.

None of the four cases cited by Bar Counsel at oral argument involved an attorney who, like Gillespie, committed rules violations in hundreds of cases. In addition, all of those cases included mitigating factors that are not present here. In *Attorney Grievance Commission v. Tanko*, we suspended an attorney for 60 days for filing two ineligible expungement petitions on behalf of a client in the District Court of Maryland after three unsuccessful attempts to do the same in a circuit court. 408 Md. 404, 425-26 (2009). The hearing judge there found as a mitigating factor that the disciplined attorney had a "misunderstanding of the relevant case and statutory law" that contributed to his violations. *Id.* at 426.

In *Attorney Grievance Commission v. Rohrback*, this Court suspended an attorney who failed to correct his client in violation of MARPC 4.1, when the client misrepresented his identity to a probation officer. 323 Md. 79, 101 (1991). For this single instance of violation, this Court imposed a 45-day suspension, acknowledging that the attorney did not create the deception. *Id.*

Similarly, in *Attorney Grievance Commission v. Parsons & Reback*, this Court imposed 90-day suspensions for falsely signing a client's name to a divorce complaint and having it notarized and filed with the court, in violation of MARPC 3.3(a). 310 Md. 132,

25

142-43 (1987). There, the sanctioned attorneys had "admitted to their wrongdoing since the outset." *Id.* at 142.

And, in *Attorney Grievance Commission v. Sperling*, this Court issued a public reprimand where the attorney violated the predecessor rule to MARPC 4.1 by failing to correct his client's false testimony in a deposition. 296 Md. 558, 561-62 (1983). The hearing judge in that case found that the attorney had "no plan or thought process to purposely tell a falsehood or to allow one to stand[.]" *Id.* at 565. In addition, the false testimony at issue in *Sperling* "was of very little, if any, relevance" to the case in which the deposition occurred. *Id.* at 565-66.

We find *Attorney Grievance Commission v. Garrett* to be more illuminating than the cases cited by Bar Counsel. 427 Md. 209 (2012). In *Garrett*, the attorney committed more than 80 rules violations in nine separate client matters, including many instances of failing to communicate with clients in a timely fashion, improperly converting unearned fees, and failing to return unearned fees to his clients. *Id.* at 228. We concluded that "disbarment is the only appropriate sanction for Respondent's 80-plus serious violations of the Rules of Professional Conduct." *Id.*; *see also Attorney Grievance Comm'n v. Brown*, 353 Md. 271, 296 (1999) (imposing indefinite suspension with one year sit-out period where "the number of complaints" was of great concern to the Court). Here, although Gillespie did not misappropriate client funds, he committed not just "80-plus serious violations" of the Rules of Professional Conduct, but hundreds of serious violations in cases around the country.

Bar Counsel contended at oral argument that this case is distinguishable from cases in which we have imposed more serious sanctions for acts of dishonesty, because the Panel did not find that Gillespie violated MARPC 8.4(c). Rule 8.4(c) prohibits an attorney from "engag[ing] in conduct involving dishonesty, fraud, deceit or misrepresentation[.]" In cases originating in Maryland, the Attorney Grievance Commission often charges violations of both MARPC 3.3(a) and 8.4(c) when seeking to discipline an attorney for dishonesty toward a tribunal. *See, e.g.*, *Attorney Grievance Comm'n v. Woolery*, 462 Md. 209, 250 (2018) ("Respondent violated Rule 8.4(c) when he violated Rule 3.3(a) by making false statements to a tribunal."); *Attorney Grievance Comm'n v. Portillo*, 473 Md. 584, 601-02 (2021) (explaining that attorneys violate MARPC 3.3(a) "when they knowingly provide a court with false information" and agreeing with the determination of the hearing judge that Respondent's acts constituting violations of MARPC 3.3(a) also violated MARPC 8.4(c)).

It is unclear why the Panel did not find a violation of MARPC 8.4(c). If it had done so, disbarment arguably would be the appropriate sanction in Maryland. *See, e.g.*, *Portillo*, 473 Md. at 606 (concluding that disbarment "is the appropriate sanction for Ms. Portillo's numerous and severe violations of the MARPC"). We attribute significance to the Panel's failure to find a violation of MARPC 8.4(c). Accordingly, we will not disbar Gillespie.

However, a four-month sit-out period would not be commensurate with the nature and gravity of Gillespie's misconduct. The egregious nature of Gillespie's misconduct, evidenced by his numerous instances of dishonesty, warrants a more serious sanction. *See Attorney Grievance Comm'n v. Protokowicz*, 329 Md. 252, 261-63 (1993) (indefinite

suspension with right to apply for reinstatement after a year for attorney misconduct that was an aberration but egregious in nature).

Under Maryland Rule 19-737(f), we impose an indefinite suspension with the right to apply for reinstatement: (1) no earlier than one year following the date of issuance of this opinion; and (2) after Gillespie has been reinstated to practice law in the district court. We base our independent review of the appropriate sanction on Maryland case law, not on the reciprocal sanctions imposed by other jurisdictions. However, we note that of the 14 jurisdictions that have imposed reciprocal discipline based on the district court's findings, only one federal district court and one federal appellate court have suspended Gillespie for four months, with the rest effectively ordering at least one year of suspension. Our decision today echoes the growing consensus that a four-month suspension understates the nature and gravity of Gillespie's misconduct. The protection of the public and the integrity of the legal profession demand more.

## III

### Conclusion

For the reasons discussed above, we suspend Gillespie indefinitely with the right to apply for reinstatement: (1) no earlier than one year following the date of issuance of this opinion; and (2) after Gillespie has been reinstated to practice law in the district court.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 19-709 FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST TRISTAN WADE GILLESPIE.**

28